**Donald LEVITT, M.D., Appellant**

v.

**Craig PATRICK, Nelson Goldberg and Marsha Goldberg, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 23, 2008.

Filed June 30, 2009.

Kelly S. Dorenkamp, Pittsburgh, for appellant.

James M. Baggett, Pittsburgh, for appellee.

BEFORE: KLEIN, POPOVICH, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

¶ 1 Appellant, Donald Levitt, M.D. ("Levitt"), appeals from the judgment entered in favor of Appellee, Craig Patrick ("Patrick"),[1] in the Court of Common Pleas of Allegheny County.[2] We hold that a claim need not be discontinued with prejudice for this Court to have jurisdiction to entertain an appeal. We further hold that under the unique facts and circumstances of this case, the action to set aside a sheriff's sale raised issues different than the instant action of mortgage foreclosure. We finally hold that a terre-tenant actually aware of an outstanding mortgage shares an obligation to repay that mortgage. We reverse the July 5, 2007 order denying post-trial relief, vacate the judgment, and remand for a new trial.

¶ 2 In April of 1994, Nelson Goldberg approached Levitt about investing in a business deal. In lieu of investing, Levitt proposed that he lend $200,000 to Mr. Goldberg secured by the property located at 113 Royston Road, Fox Chapel, Pennsylvania ("Property"). Nelson and Marsha Goldberg ("Goldbergs") agreed, and on April 13, 1994, executed a mortgage on the Property, which was later recorded.

¶ 3 The trial court states the extensive factual and procedural history regarding this decade-long dispute.

On November 16, 1999, Patrick made a written offer to purchase the Property[,] which was accepted by the Goldbergs (the Patrick Agreement). The purchase price stated in the Patrick Agreement was $908,000.00. According to a separate addendum, an agreement between Patrick and the Goldbergs allocated $58,000.00 of the purchase price to specific items of personalty. The Patrick Agreement provided that settlement would take place on or before February 28, 2000[,] with time being of the essence. The Agreement further provided that the Goldbergs would convey the Property free and clear of all liens, encumbrances, and easements with certain standard exceptions and that the title to said real estate would be good and marketable.

On February 18, 2000, Laura A. Shapira (Shapira) and Thomas A. Karet (Karet) made a written offer to purchase the Property which was accepted by the Goldbergs (the Shapira–Karet Agreement). During this period of time, an in

* Former Justice specially assigned to the Superior Court.

1. Although Nelson and Marsha Goldberg are listed as Appellees, only Patrick filed an appellate brief, and Levitt's claims pertain to Patrick only.

2. Because Levitt improperly appealed from the order denying his post-trial motion, we amended the caption to reflect that the appeal properly lies from the judgment entered on August 7, 2006. *See Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 513 (1995).

rem judgment in mortgage foreclosure in favor of Southwest National Bank of Pennsylvania (Southwest) and against the Goldbergs had been entered at number GD96–000396. Southwest held the first mortgage on the Property and Levitt held a second mortgage. On March 6, 2000, the Property was sold at a judicial sale pursuant to the judgment in mortgage foreclosure. The high bidder and purchaser of the Property for $925,000.00 at the judicial sale was counsel for Karet who acted as a straw party for Karet in the transaction.

The [Goldberg]-Patrick settlement did not occur on February 28, 2000 as contemplated by the Patrick Agreement. Although ... Patrick was ready, willing and able to carry out the purchase [prior to the judicial sale,] Nelson Goldberg refused. Patrick learned of the pending judicial sale on March 1, 2000 and communicated his intent to settle the transaction prior to the judicial sale. The Goldbergs did not appear at the appointed time and place[,] although Patrick did appear.

On March 17, 2000, Patrick timely filed a Petition to Set Aside Sheriff's Sale pursuant to Pa.R.C.P. 3136 at number GD96–000396. On July 18, 2000, Levitt filed a Petition to Intervene at GD96–000396 and an Order was entered granting Levitt leave to intervene in the Petition to Set Aside Sheriff's Sale proceedings. Levitt's purpose in the intervention, as stated in his Petition and Brief, was an attempt to protect the amounts due under his second mortgage. The contractual purchase price to be paid by Patrick was not sufficient to pay [Levitt's] second mortgage in full. In his Petition to Intervene, Levitt averred that "if [Patrick's] petition to set aside the sale is granted, [Levitt's] interest would be adversely affected." Levitt argued in his Petition and Brief

in Opposition ... that [Levitt's] interest in the Property would be harmed because the funds from the [Goldberg–Patrick] sale would not pay his second mortgage in full. Levitt and his counsel appeared in court and counsel participated in the argument regarding [Patrick's] Petition to Set Aside.

On December 7, 2000, the court entered an Order setting aside the sheriff's sale of March 6, 2000. Both Karet and Nelson Goldberg appealed the Order to the Pennsylvania Superior Court but Levitt did not file an appeal.

On April 28, 2000, Patrick had filed a Complaint in Specific Performance against the Goldbergs at number GD00–7417 seeking the enforcement of the Patrick Agreement which would result in the conveyance of the Property for $908,000.00. Levitt and Karet both sought to intervene in the action for specific performance raising the same issues that [Patrick] had raised in [his] Petition to Set Aside. In his Petition to Intervene, Levitt again argued that if the Property was conveyed under the terms of the Patrick Agreement, the amount paid would not satisfy his mortgage.

The court denied both Karet's and Levitt's Petitions and Levitt filed a Petition for Reconsideration which was also denied. Levitt did not file an appeal to the Pennsylvania Superior Court from the denial of his request to intervene.

On February 28, 2001, the [trial] court issued an Adjudication and Decree Nisi in the action for specific performance which directed the Goldbergs to pay such sums of money as necessary to extinguish liens and encumbrances against the Property and deliver a good and insurable title to the Property.

Trial Ct. Op., 11/29/07, at 2–5. The February 28, 2001 adjudication and decree *nisi* held in pertinent part:

> ["I]s there any principle which is more familiar or more firmly embedded in the history of Anglo–American law than the basic doctrine that the courts will not permit themselves to be used as instruments of inequity and injustice? Does any principle in our law have more universal application than the doctrine that courts will not enforce transactions in which the relative positions of the parties are such that one has unconscionably taken advantage of the necessities of the other?["]
>
> * * *
>
> Patrick is not obligated to pay to the Goldbergs more than the aggregate sum of $908,000 and the closing costs which he agreed to pay to settle the transaction contemplated by the Agreement. In the event that Patrick, in order to consummate the purchase of the Property, is required to assume the obligation of any liens or encumbrances, or otherwise pay money to extinguish such liens, in whole or in part, the HUD–1 Settlement Statement (or any reasonably equivalent documentation) shall be certified to this Court as *prima facie* evidence of the contumacy of the Goldbergs with respect to compliance with this *decree nisi* and in connection therewith further proceedings will be had as may be requested.

Trial Ct. Op., 2/28/01, at 1, 6 (quoting *United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 326, 62 S.Ct. 581, 599, 86 L.Ed. 855, 876–77 (1942) (Frankfurter, J., dissenting)). Pursuant to the court's order, the prothonotary signed a deed conveying the Property from the Goldbergs to Patrick on March 22, 2001.

¶ 4 Nelson Goldberg appealed, and Karet timely appealed from the order denying his Petition to Intervene. This Court consolidated the appeals. On September 13, 2002, this Court affirmed the orders setting aside the sheriff's sale, denying Karet's petition to intervene, and for specific performance. *Patrick v. Goldberg,* Nos. 637 & 688 WDA 2001 (unpublished memorandum at 2), 813 A.2d 915 (Pa.Super. filed Sept. 13, 2002); *Southwest Nat'l Bank of Pa. v. Goldberg,* No. 28 WDA 2001 (unpublished memorandum), 2001 WL 34734340 (Pa.Super. filed Aug. 15, 2002).

¶ 5 Meanwhile, on July 31, 2001, Levitt filed a complaint in mortgage foreclosure against Patrick and the Goldbergs, seeking full repayment of the $200,000 second mortgage. When the Goldbergs conveyed the Property to Patrick for $908,000, the title company did not have sufficient funds to pay the second mortgage in full. After paying off the senior lien-holders and creditors, the title company paid $110,000 to Levitt.[3]

¶ 6 Patrick counterclaimed against Levitt for tortious interference. Because Nelson Goldberg passed away, the parties agreed to dismiss him from the case. The parties also agreed to bifurcate Levitt's claim and Patrick's counterclaim. Finally, the parties agreed to enter judgment in favor of Levitt and against Marsha Goldberg without prejudice to any defenses that could be raised by Patrick.

¶ 7 On March 13 and 14, 2006, a bench trial was held on Levitt's claim. On August 3, 2006, the court entered a verdict in

---

**3.** This Court previously noted that Nelson Goldberg testified he could raise $530,000 and thus had the funds "for extinguishing any outstanding liens and closing costs." *South-* *west Nat'l Bank of Pa., supra* at 27. We do not speculate as to why the Goldbergs elected not to pay in full Levitt's second mortgage.

favor of Patrick. On August 7, 2006, the court entered judgment against Marsha Goldberg in the amount of $184,637.87 plus interest. This sum apparently represents the remaining amount owed on the Levitt mortgage after Patrick's purchase of the Property.

¶ 8 It appears the court erred by not properly serving the verdict on Levitt's counsel. Levitt's counsel alleged he received the verdict too late to file a timely post-trial motion and opted to file a notice of appeal. This Court quashed the appeal, and on September 25, 2006, Levitt moved to file post-trial motions *nunc pro tunc*. The court granted the motion, and on July 5, 2007, denied Levitt's motion for post-trial relief. Levitt timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement.

¶ 9 On August 27, 2007, this Court issued a rule to show cause why this appeal should not be quashed as interlocutory because Patrick's counterclaim against Levitt remained outstanding. On September 5, 2007, the parties agreed to discontinue Patrick's counterclaim without prejudice.

¶ 10 On November 30, 2007, the trial court issued its Rule 1925(a) opinion. In its opinion, the court quoted the February 28, 2001 adjudication and decree *nisi* in the *Patrick v. Goldberg* matter:

> It is the legal responsibility of the Goldbergs to otherwise pay persons holding liens and encumbrances amounts sufficient to extinguish those liens and encumbrances and deliver a general warranty deed of conveyance of the Property to Patrick.... If the consummation of the transaction contemplated by the agreement has been made more expensive by the conduct of the Goldbergs, or either of them, it should not fall upon Patrick to absorb such additional expense.

> Levitt has had a full and fair opportunity to litigate the issue of whether Patrick has any obligation to Levitt on Levitt's second mortgage securing his loan to the Goldbergs. The trial court and Pennsylvania Superior Court have stated that Patrick is not liable on the mortgage. The previous judicial determinations regarding the Goldbergs' liability to Levitt and the corresponding determination that Patrick has no liability to Levitt are conclusive.

Trial Ct. Op., 11/30/07, at 9; R. 1349a.

¶ 11 As a prefatory matter, we address whether this appeal is properly before us. The Pennsylvania Supreme Court noted, "[A] *praecipe* to discontinue constitutes a final judgment." *Miller Elec. Co. v. DeWeese,* 589 Pa. 167, 172, 907 A.2d 1051, 1055 (2006) (interpreting and ultimately overruling in part *Freidenbloom v. Weyant,* 814 A.2d 1253 (Pa.Super.2003)).

> A discontinuance in strict law must be by leave of court, but it is the universal practice in Pennsylvania to assume such leave in the first instance. This was stated to be the established practice as long ago as 1843, in *Schuylkill Bank v. Macalester,* 6 Watts & S. 147, where it is said *per curiam:* 'All the cases show that a discontinuance must be founded on the express or implied leave of the court. In England this leave is obtained on motion in the first instance, and here it is taken without the formality of an application, but subject to be withdrawn on cause shown for it; that is the whole difference.' The causes which will move the court to withdraw its assumed leave and set aside the discontinuance are addressed to its discretion, and usually involve some unjust disadvantage to the defendant or some other interested party, such as a surety.

*Fancsali ex rel. Fancsali v. Univ. Health Ctr. of Pittsburgh,* 563 Pa. 439, 444–45, 761 A.2d 1159, 1161–62 (2000) (quoting *Consol. Nat'l Bank v. McManus,* 217 Pa. 190, 191–92, 66 A. 250, 250 (1907)).

¶ 12 The key inquiry in any determination of finality is whether there is an outstanding claim. Pa.R.A.P. 341; *see also Bourne v. Temple Univ. Hosp.,* 932 A.2d 114, 115–16 (Pa.Super.) (noting that court's approval of stipulation withdrawing claims without prejudice rendered order final for purposes of appeal), *appeal denied,* 595 Pa. 710, 939 A.2d 889 (2007). If any claim remains outstanding and has not been disposed of by the trial court, then it does not matter whether the claim is classified as a counterclaim or a bifurcated claim, for the result is the same: this Court lacks jurisdiction to entertain the appeal unless the appeal is interlocutory or we grant permission to appeal. Pa.R.A.P. 341.

¶ 13 Similarly, if a claim was discontinued prior to trial, we do not inquire whether the discontinuance was with or without prejudice. *Cf. Bourne,* 932 A.2d at 115–16. The Pennsylvania Rules of Civil Procedure permit a party to "commence a second action upon the same cause of action" after a discontinuance. Pa.R.C.P. 231. This second action is considered a new action and not a continuation of the initial action. *Williams Studio Div. of Photography by Tallas, Inc. v. Nationwide Mut. Fire Ins. Co.,* 380 Pa.Super. 1, 550 A.2d 1333, 1335 (1988); *Strauss v. Weinstein,* 203 Pa.Super. 389, 198 A.2d 631, 632 (1964). Because a party may initiate a new action upon a discontinued claim, it follows that a discontinued claim is not before the trial court for resolution. *Williams Studio Div. of Photography by Tallas, Inc.,* 550 A.2d at 1335.

¶ 14 Instantly, the parties jointly agreed to discontinue Patrick's sole bifurcated counterclaim against Levitt. *See* Joint Praecipe to Discontinue Bifurcated Claims, 9/05/07. The parties further agreed that "all issues that were not the subject of the trial of this matter . . . have been disposed of." *Id.* The discontinuance constitutes a final judgment as a matter of law. *See Miller Elec. Co. v. DeWeese,* 589 Pa. at 172, 907 A.2d at 1055. Because our finality inquiry has always focused on the existence of an outstanding claim, *see* Pa. R.A.P. 341, we need not examine whether Patrick's bifurcated counterclaim was discontinued with or without prejudice. *See Bourne,* 932 A.2d at 115–16. There are no outstanding claims remaining and thus we have jurisdiction to consider this matter. *See* Pa.R.A.P. 341.

¶ 15 Levitt raises the following issues:

Whether a new trial should be granted on all issues because the trial court committed an error of law in applying the principl[es] of collateral *estoppel* and *res judicata* to cases where the issues and parties were different than the present case?

Whether a new trial should be granted on all issues because the trial court committed an error of law in interpreting prior court proceedings as having extinguished plaintiff Levitt's valid mortgage?

Whether the non-jury verdict in favor of defendant Patrick should be overturned because it was unsupported by the evidence, which clearly established that plaintiff Levitt possessed a valid mortgage and was entitled to foreclose?

Levitt's Brief at 4 (re-ordered to facilitate disposition).

¶ 16 With respect to Levitt's challenges, this Court adheres to the following standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine

whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Baney v. Eoute*, 784 A.2d 132, 135 (Pa.Super.2001) (citation omitted). If we conclude the trial court abused its discretion or committed an error of law, then we may reverse the denial of a motion for a new trial. *Collins v. Cooper*, 746 A.2d 615, 617 (Pa.Super.2000).

¶ 17 Levitt argues that the trial court erred in applying the principles of collateral *estoppel* and *res judicata*. He contends that the court erred in relying on prior orders and opinions in holding that Patrick was not liable for the mortgage. *See* Trial Ct. Op., 2/28/01, at 9; R. 1349a; Adjudication and Decree *Nisi*, 2/28/01; R. 872a–79a; *Patrick v. Goldberg*, Nos. 637 & 688 WDA 2001, at 1–51; R. 882a–932a. He insists that nothing in the trial court's or this Court's decision extinguished his mortgage on the Property. Levitt maintains that the prior actions addressed the transfer of title of the Property while the instant action is to foreclose on a valid mortgage. Levitt suggests this Court should reverse the denial of his motion for a new trial and order a new trial. We agree that Levitt is entitled to relief.

¶ 18 The Pennsylvania Supreme Court defined *res judicata* as follows:

Res judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.

*Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 587 Pa. 590, 607, 902 A.2d 366, 376 (2006) (citations omitted).

There must be a concurrence of four conditions in order for respondent to prevail on his *res judicata* claim. The doctrine of *res judicata* applies when there exists an identity of issues, an identity of causes of action, identity of persons and parties to the action, and identity of the quality or capacity of the parties suing or being sued. Similarly, a collateral *estoppel* claim will succeed only with the concurrence of four conditions. Collateral *estoppel* applies when the issue decided in the prior adjudication was identical with the one presented in the later action, there was a final judgment on the merits, the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication. Neither *res judicata* nor collateral *estoppel* will apply in the absence of an identity of issues.

*In re Iulo*, 564 Pa. 205, 210, 766 A.2d 335, 337 (2001) (citations omitted).

¶ 19 Instantly, although Levitt successfully intervened in the *Southwest Nat'l Bank of Pa.* matter, the cause of action was different. In that case, Levitt successfully intervened as a respondent opposing Patrick's Petition to Set Aside

Sheriff's Sale of the Property. *See Patrick,* 637 & 688 WDA 2001, at 6; *see also* Def.'s Trial Ex. 2; R. 796a. The existence of a second mortgage established Levitt's standing to intervene in the prior action. Levitt did not seek to foreclose on the second mortgage at that time.

¶ 20 In this case, the issues are the validity of the mortgage and Levitt's right to foreclose. These issues are evidently dissimilar to the issue in the prior action of setting aside a sheriff's sale of the Property. No court has previously adjudicated the merits of the instant issues. *See In re Iulo,* 564 Pa. at 210, 766 A.2d at 337. "Neither *res judicata* nor collateral *estoppel* will apply in the absence of an identity of issues." *Id.* Because the trial court committed an error of law by improperly invoking the doctrines of *res judicata* and collateral *estoppel* absent an identity of the issues, we reverse the denial of Levitt's motion for a new trial. *See Collins,* 746 A.2d at 617.[4]

¶ 21 Levitt next argues that the court erred by concluding that the trial court's and this Court's decisions in the prior litigation extinguished his second mortgage. Levitt argues that when property is transferred with an outstanding mortgage, the mortgage is not extinguished. He contends that he has a valid mortgage and it was in default. He also alleges that Patrick admitted he knew of the mortgage and made a partial payment of $110,000. Patrick counters that a mortgage is a lien on the property and does not transfer title to the property. Patrick reasons that when there is no debt, there is no valid and enforceable mortgage. "Although we recognize that this issue will become moot if the trial court, on remand, rejects its earlier finding ..., in the interest of judicial economy, we shall address this claim." *Commonwealth v. Tizer,* 454 Pa.Super. 1, 684 A.2d 597, 603–04 (1996).

¶ 22 As a prefatory matter, we observe that we cannot adequately reconcile Patrick's testimony at trial with his arguments on appeal. Patrick testified he was unable to obtain title insurance on the property because of the outstanding Levitt mortgage. N.T., 3/14/06, at 154; R. 684a. Patrick, however, argues on appeal that the trial court and this Court's prior decisions extinguished the mortgage.

¶ 23 Regardless, the trial court anticipated the possibility that Patrick would have to assume any liens or encumbrances on the Property. *See* Trial Ct. Op., 2/28/01, at 6. The court therefore established a method by which Patrick could petition the court to find the Goldbergs in

4. The trial court reasoned: "It is only necessary that the issue of fact determined in the prior case and the issue in the pending case are the same...." Trial Ct. Op., 11/29/07, at 8 (citing *Davis v. O'Brien,* 230 Pa.Super. 449, 326 A.2d 511 (1974)). The court was apparently referencing this language: "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action...." *Davis,* 326 A.2d at 512 (quoting Restatement (First) of Judgments § 68 (1942)). The factual burden of proof to foreclose on a mortgage, however, is different than the burden of proof to set aside a sheriff's sale. *Compare* Pa. R.C.P. 1147 (stating plaintiff in mortgage foreclosure action must allege in complaint, *inter alia,* mortgage and default), *and Union Nat'l Bank of Little Rock v. Cobbs,* 389 Pa.Super. 509, 567 A.2d 719, 721 (1989) (noting action of mortgage foreclosure is action at law, although equitable relief may be available if such relief is consistent with principles of law), *with Jefferson Bank v. Newton Assocs.,* 454 Pa.Super. 654, 686 A.2d 834, 838 (1996) ("A petition to set aside a sheriff's sale invokes the equitable powers of a trial court. The burden of proof rests upon the proponent of the petition to show by clear and convincing evidence that the circumstances warrant relief.").

contempt and presumably request relief making him whole. *Id.* (stating, "In the event that Patrick, in order to consummate the purchase of the Property, is required to assume the obligation of any liens or encumbrances, or otherwise pay money to extinguish such liens, in whole or in part, the HUD–1 Settlement Statement ... shall be certified to this [c]ourt as *prima facie* evidence of the contumacy of the Goldbergs with respect to compliance with this decree *nisi* ...."). Patrick, however, chose not to pursue this course of action. Patrick further elected not to pursue a claim against the Goldbergs for failure to convey good and marketable title to the Property or request indemnification. Because the court anticipated that Patrick would have to assume the Levitt mortgage, and because there is an absence of an identity of issues, we cannot construe any language in the trial court's or this Court's prior decisions as extinguishing the Levitt mortgage. *See* Trial Ct. Op., 2/28/01, at 6; *In re Iulo,* 564 Pa. at 210, 766 A.2d at 337.

¶ 24 We further observe that our courts have previously addressed when a terre-tenant was obligated to pay a pre-existing mortgage. By way of background, a lender may enforce its bond and mortgage via two methods:

> The holder of a bond and mortgage can proceed *in rem* or *in personam* to enforce his claim. He may proceed by an action of mortgage foreclosure or by an action on the bond which the mortgage secures. In actions of mortgage foreclosure the procedure is governed primarily by the Rules of Civil Procedure. An action of mortgage foreclosure is commenced by the filing of a complaint, Pa.R.C.P. 1143, which must name as defendants the mortgagor and also the real owner, or terre-tenant, of the property. A "real owner" or "terre-tenant" is one who claims an interest in the land subject to the lien of the mortgage. Thus, one who takes title from the mortgagor is a "real owner." A subsequent owner must be named as a real owner in a mortgage foreclosure action, for the action is *in rem* and binds only the mortgaged property.

> In a proceeding by confession of judgment on the bond, the object is to obtain judgment against the obligor of the bond. This is a proceeding *in personam.* The judgment, unlike a judgment in mortgage foreclosure, is general and is not restricted to the mortgaged premises. It constitutes a lien generally on real estate owned by the obligor at the time of the judgment. With respect to the mortgaged premises, the lien of the judgment relates back to the date of the lien of the mortgage by which the bond is secured. "When the property which is subject to the mortgage [has been] transferred without payment of the mortgage, the property in the hands of the transferee continues to be security for the performance of the obligation, and for any default the mortgagee may seize and sell the property in the hands of the transferee." *Mancine v. Concord–Liberty Savings and Loan Association,* 299 Pa.Super. 260, 269, 445 A.2d 744, 748 (1982). Thus, a judgment entered on the bond creates a lien on the mortgaged premises even though such premises may have been conveyed before the judgment was entered and no matter who may be the owner at the time the judgment is entered.

> The judgment confessed on the bond, being *in personam* against the obligor, does not bind strangers to the bond. It does not bind the person of one who has purchased the real estate subject to the mortgage. It follows that such a person has no right to attack the validity of the

judgment entered *in personam* against the obligor.

*Bank of Pa. v. G/N Enter., Inc.*, 316 Pa.Super. 367, 463 A.2d 4, 6–7 (1983) (some citations omitted).

¶ 25 In *U.S. Steel Homes Credit Corp. v. South Shore Dev. Corp.*, 277 Pa.Super. 308, 419 A.2d 785 (1980), U.S. Steel Homes Credit Corporation ("Steel") was the mortgagee, or creditor, and South Shore Development Corporation ("Shore") was the mortgagor, or borrower. *Id.* at 786. Officials of Shore also executed a document personally guaranteeing the mortgage. Shore conveyed the property to a third party, William Simitoski ("Simitoski"), who was unaware of the mortgage due to a faulty title search. *Id.* at 787.

¶ 26 Steel filed a complaint in mortgage foreclosure against Shore, Simitoski, and the personal guarantors. *Id.* At the foreclosure hearing, Simitoski tendered the full amount owed to Steel. *Id.* Steel was willing to assign the mortgage to Simitoski, but not the document holding the officials personally liable. *Id.*

¶ 27 In resolving the issue of whether Simitoski, as subrogee, had the "right to have the mortgage on his property assigned to him together with all rights and remedies which the original mortgagee . . . had against the individual guarantors of the mortgage[,]" *id.*, the Court observed:

> Mr. Simitoski has paid (or has tendered payment) the debt of another, the South Shore Development Corporation, in order to clear title to his land. Since he was in possession of the land subject to an existing lien of a mortgage, he was a terre-tenant. *See Dengler v. Kiehner*, 13 Pa. 37 (1849). He was, of course, not a volunteer in offering to pay off the mortgage as he may lose his land if the mortgage is not satisfied.

*Id.* at 787–88. This Court reiterated that observation:

> A mortgage, although in form a conveyance of title, is only security for the payment of money or the performance of another collateral contract. When the property which is subject to the mortgage is transferred without payment of the mortgage, the property in the hands of the transferee continues to be security for the performance of the obligation, and for any default the mortgagee may seize and sell the property in the hands of the transferee. The contractual relationship between mortgagee and transferee continues by operation of law.

*Mancine v. Concord–Liberty Sav. and Loan Ass'n*, 299 Pa.Super. 260, 445 A.2d 744, 748 (1982).

¶ 28 In *Heaney v. Riddle*, 343 Pa. 453, 23 A.2d 456 (1942), the Pennsylvania Supreme Court addressed analogous facts. Heaney borrowed $15,000, which was secured by a mortgage on a property. *Id.* at 454, 23 A.2d at 458. Heaney conveyed the property to The Riddle Company subject to the mortgage. *Id.* A few years later, The Riddle Company dissolved, the mortgagee entered judgment on the bond, and the property was sold at the sheriff's sale, with some of the proceeds partially satisfying the judgment. *Id.* at 454–55, 23 A.2d at 458. Heaney was then compelled to pay the outstanding remainder to the lender, and sued The Riddle Company to recover that sum. *Id.* at 455, 23 A.2d at 458. The *Heaney* Court reasoned:

> When title to the premises was conveyed by plaintiff to The Riddle Company under and subject to the $15,000 mortgage, the amount of the mortgage debt was presumably part of the consideration for the purchase, and there arose an obligation of The Riddle Company to indemnify [Heaney] against loss by reason of the encumbrance; as between [Heaney] and the company, the latter made the

mortgage debt its own and became primarily liable therefor. . . .

*Id.* at 456, 23 A.2d at 458 (citations omitted).

Upon breach of the implied covenant of indemnity, [Heaney] was entitled to recover the amount necessary to restore him to the position in which he would have been if the covenant had been kept; his right was that of complete exoneration from the mortgage debt which the Riddle Company had impliedly agreed to discharge. The liability of the company was co-extensive with the original obligation, and it was chargeable with notice of all the terms of the bond and mortgage as therein disclosed.

*Id.* at 459, 23 A.2d at 460. The *Heaney* Court affirmed the judgment in Heaney's favor and against The Riddle Company in the amount that Heaney was obligated to pay to satisfy the mortgage. *Id.*

¶ 29 Instantly, the issue is relatively straightforward. Levitt has a mortgage on Property owned by terre-tenant Patrick. The Goldbergs, former owners of the Property, were supposed to convey the Property free and clear of all encumbrances pursuant to court order. *See* Trial Ct. Op., 2/28/01, at 6. Although the Goldbergs failed to convey good and marketable title, Patrick nonetheless took title to the Property subject to the mortgage. *See U.S. Steel Homes Credit Corp.*, 419 A.2d at 788; *accord Mancine*, 445 A.2d at 748. Patrick, however, unlike terre-tenant Simitoski in *U.S. Steel Homes Credit Corp.*, was fully aware of the mortgage and did not pay it.

¶ 30 Patrick, therefore, is more akin to terre-tenant The Riddle Company, who similarly failed to pay the mortgage. *See Heaney*, 343 Pa. at 454–55, 23 A.2d at 458.

In that case, however, Heaney, as the original mortgagor, paid the outstanding mortgage and then sued terre-tenant The Riddle Company. *Id.* at 455, 23 A.2d at 458. The Goldbergs, instantly, did not pay the outstanding mortgage and subsequently sue Patrick.

■ ¶ 31 Instead, and similar to the procedural stance in *U.S. Steel Homes Credit Corp.*, mortgagee Levitt sued the Goldbergs as the mortgagors and Patrick as the terre-tenant who was fully aware of the mortgage. *See U.S. Steel Homes Credit Corp.*, 419 A.2d at 787. Because the Property was transferred without full satisfaction of the Levitt mortgage, and based on our conclusion that the trial court's and this Court's prior decisions did not extinguish the mortgage, terre-tenant Patrick is obligated to pay the mortgage and Levitt is entitled to seize and sell the Property. *See Heaney*, 343 Pa. at 455, 23 A.2d at 458; *Mancine*, 445 A.2d at 748; *U.S. Steel Homes Credit Corp.*, 419 A.2d at 788.

¶ 32 Because of our disposition of Levitt's first two issues, we decline to address his remaining issue challenging the sufficiency of the evidence. We acknowledge Levitt obtained a judgment against Marsha Goldberg for $184,637.87 plus interest. That judgment does not preclude Levitt from foreclosing on his mortgage, or Patrick from pursuing any valid claims he may have against Marsha Goldberg. *Cf. Heaney*, 343 Pa. at 459, 23 A.2d at 460; *U.S. Steel Homes Credit Corp.*, 419 A.2d at 787.[5] Accordingly, we hold that we have jurisdiction to entertain this appeal because a claim was discontinued without prejudice, there was no *res judicata* or collateral *estoppel* in this case, and Patrick, as a terre-tenant who was actually aware

---

**5.** Obviously, Levitt may elect to enforce the judgment against Marsha Goldberg, but he is not entitled to double recovery for the amount owed on his mortgage.

of an outstanding mortgage, shared an obligation to repay it. For all these reasons, we reverse the denial of Levitt's motion for a new trial, vacate the judgment, and remand for a new trial. *See Collins,* 746 A.2d at 617.

¶ 33 Judgment vacated. Order denying new trial reversed. Case remanded for new trial. Jurisdiction relinquished.