J.A13041/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HARRIETT HUEITT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA MEDIA HOLDINGS, LLC | : | |
| D/B/A THE PHILADELPHIA DAILY NEWS | : | |
| AND JEFFREY ALEXANDER VARGAS | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY KEELEY A/K/A/ | : | |
| TIMOTHY B. KEELEY, SR. | : | No. 2632 EDA 2013 |

Appeal from the Order Entered June 13, 2011
In the Court of Common Pleas of Philadelphia County
Civil No(s).: 3553

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 14, 2015**

Appellant, Harriett Hueitt, appeals from the order entered in the Philadelphia County Court of Common Pleas granting the summary judgment motion of Appellee, Philadelphia Media Holdings, LLC, doing business as the Philadelphia Daily News ("Daily News").[1]  Hueitt claims the trial court erred by not holding that Daily News violated a legal duty and that the peculiar risk doctrine applied.  We reverse and remand.

---

[*] Former Justice specially assigned to the Superior Cnewourt.

[1] Daily News is the only appellee.  The procedural posture is explained, **infra**.

We state the facts[2] as set forth by a prior panel of this Court:

> We briefly state the facts, which are generally undisputed, in the light most favorable to Ms. Hueitt. In the early morning of October 6, 2006, Ms. Hueitt was driving on Island Avenue in northeast Philadelphia. [While the traffic light was green,[3] s]he stopped at the intersection with Bartram Avenue to purchase a Philadelphia Daily News newspaper from a street vendor. Mr. [Jeffrey] Vargas, who was driving behind Ms. Hueitt, rear-ended her vehicle. As a result, Ms. Hueitt was injured.
>
> The street vendor is known as a "hawker."[FN] The Daily News sells newspapers to contractors. Ex. B to Daily News's Mem. of Law in Support of Mot. for Summ. J. The contractors, in turn, hire and train homeless or disadvantaged people—"hawkers"—to sell newspapers. *Id.* The agreement between the Daily News and the contractors specifies the general areas within which they may sell. Ex. C. to Daily News' Mem. of Law in Support of Mot. for Summ. J. The agreement also contains a risk of loss provision:
>
> > **RISK OF LOSS**. Upon Contractor's pick-up of Newspapers from [Daily News], the risk of loss with respect to the Newspapers, and the title to the Newspapers, passes to Contractor who then becomes responsible for any damaged or extra Newspapers that were picked up. In addition,

---

[2] Like the prior panel of this Court, we disregard any factual allegations by the parties unsubstantiated by the certified record or outside our scope of review. **See Hueitt v. Phila. Media Holdings, LLC**, 1922 EDA 2011, slip op. at 2 (Pa. Super. Jan. 28, 2013) ("**Hueitt I**") (citing **Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006) (*en banc*)).

[3] As Hueitt approached the intersection, "she saw that the light for her direction of travel was green. . . . She slowed her car, tapped her horn, then stopped . . . . While she was stopped, she observed the traffic light for her direction of travel was still green." Hueitt's Supplement to Opp. to Daily News' Mot. for Summ. J., 5/31/11, at 2.

> Contractor bears all other risks incurred in running Contractor's business, including the risk of loss of non-payment by purchasers.
>
> *Id.* The contractors also indemnify Daily News for any injuries resulting from any actions or omissions by the contractors and hawkers. *Id.*

---

[FN] The parties dispute whether the contractors are independent.

---

> Ms. Hueitt filed a complaint against the Daily News and Mr. Vargas. Ms. Hueitt raised two separate claims: a claim of negligence against the Daily News and a claim of negligence against Mr. Vargas. Ms. Hueitt's Am. Compl. The Daily News joined Timothy B. Keeley, also known as Timothy B. Keeley, Sr., as an additional defendant. Joinder Compl. of Daily News. The Daily News alleged Mr. Keeley was the contractor who supervised the hawker in this case and also invoked indemnification. Mr. Vargas raised a cross-claim of negligence against the Daily News. Mr. Vargas's Answer with New Matter to Ms. Huiett's Am. Compl. No party sued the hawker.

*Hueitt v. Phila. Media Holdings, LLC*, 1922 EDA 2011, slip op. at 2-4 (Pa. Super. Jan. 28, 2013) ("*Hueitt I*").

With respect to her claim of negligence against Daily News, she averred:

> 23. At all times relevant to this action, an unidentified individual was working in the capacity of an employee, agent, servant and business representative of [Daily News].
>
> 24. [Daily News] and its predecessors contracted, hired and used individuals to sell its newspaper[,] the Philadelphia Daily News[,] at various [i]ntersections throughout Philadelphia. The intersection at Island and

Bartram was an intersection that has vendors of [Daily News] engaged in furtherance of the business of [Daily News] on a regular basis.

25. The individuals hired by [Daily News] would walk out in traffic and seek to sale [sic] newspapers at intersections.

25. [sic] The act of attempting to make a sale of a product in a designated roadway such as Island Bartram avenues is negligent, unsafe and dangerous, in that their actions impede the safe flow of traffic and result in traffic stopping on roadways.

26. [Daily News'] act of soliciting and selling a newspaper to [Hueitt] on the roadway of Island Avenue was negligent and unsafe act.

25. [sic] As a direct and proximate result of the negligence of [Daily News'] agent, employee, and/or contractor, [Hueitt], has sustained severe and painful injuries, both physical and emotional, temporary and permanent, [Hueitt] has incurred and will in the future incur substantial expenses for medical care and treatment, past and future lost wages and a loss of earning capacity, and [Hueitt] has been otherwise injured and damaged, all without any negligence on the part of [Hueitt] contributing thereto.

Hueitt's Compl., 9/17/08, at 6-7. Daily News denied the allegations.

"Discovery ensued. The Daily News filed a motion for summary judgment." *Hueitt I*, at 4. Daily News' summary judgment motion alleged as follows:

15. Here, [Daily News] owed no duty to [Hueitt] for the alleged actions of this hawker hired by its independent contractors.

16. Under Pennsylvania Law, when an injury is done by an "independent contractor," the person employing him is generally not responsible to the person injured. Restatement (Second) of Torts § 409 ("[T]he employer of

an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.").

17. The two exceptions to this general rule of non-liability are (1) if the hiring party exercised "control over the means and methods of the contractor's work" and (2) if the work being performed poses a special danger or is particularly risky. *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1273, 1276 (Pa. 2006).

18. Clearly, neither exception applies to the case at bar.

19. First, the business of selling newspapers is evidently not the type of "peculiar risk" which the courts intended to carve out by this exception.

20. Secondly, the evidence of record establishes that [Daily News] had no control over the training, hiring, or distribution of newspapers through the "hawkers" hired by its independent contractor.

21. As a result, there is no duty on the part of [Daily News] for actions allegedly taken by one of the independent news "hawkers."

22. Consequently, as the record makes clear, [Hueitt] cannot establish a prima facie case against [Daily News] and [it] is not liable as a matter of law.

Daily News' Mot. for Summ. J., 4/29/11, at 3-4. In sum, Daily News challenged that it owed a duty to Hueitt because it purportedly employed an independent contractor who, in turn, hired vendors to sell Daily News' newspapers. *See id.*

Hueitt opposed Daily News' motion for summary judgment, and responded to paragraphs 15 and 18-22, as follows:

15. Denied. [Daily News] implemented a program of direct sales with knowledge of the dangerous practices at issue

and took no action to review, inspect or monitor the practices of the individuals selling [Daily News'] product.

\* \* \*

18. Denied.

19. Denied. Selling newspapers in the median of traffic and in traffic lanes is illegal, against Pennsylvania State and Philadelphia Code, is unsafe and dangerous both to the vendor and individuals operating vehicles and as such [Daily News] does not have the protection of the independent contractor law.

20. Denied.

21. Denied.

22. Denied.

Hueitt's Opp'n to Daily News' Mot. for Summ. J., 5/26/11, at 2-3.

In support of her opposition, Hueitt also included a counterstatement of "facts,"[4] as follows:

7. The placement of vendors in roadways catering to operators of vehicles while they are driving their vehicles is a dangerous and unsafe practice that can lead to foreseeable harm and against the law in the City of Philadelphia and the Commonwealth of Pennsylvania.

8. [Daily News] and/or individuals hired by [Daily News] would walk out into traffic and seek to sale [sic] newspapers at intersections and [Daily News] authorized the sales, dropped off the papers and selected the locations from which the sales would take place.

9. The act of attempting to make a sale of a product in a designated roadway such as Island Bartram avenues is

---

[4] Some "facts" were arguably legal conclusions.

negligent, unsafe and dangerous, in that their actions impede the safe flow of traffic and results in traffic stopping on roadways.

*Id.* at 4-5 (citations to exhibits omitted).

Her opposition also included the following deposition testimony from Frederick Lehmen, Jr., Daily News' corporate designee:

[Hueitt's counsel]. Okay. Are you aware of any other incidents occurring, car accidents in particular, as a result of the sale of the newspapers in any of the areas of the city?

A. Related to the Hawker Program?

Q. Yeah.

A. We had an incident a while ago where we had a Hawker struck by a vehicle. It was a vehicle—I think a police pursuit.

[Daily News' counsel]. Just note my objection. If it's not substantially similar, I don't think it's relevant. But you've answered the question.

[A.] It was, approximately, five years ago.

[Hueitt's counsel]. How about anything similar to this incident, where there's a rear-ender or something happens while the newspaper is, actually, being sold?

A. Absolutely not. I don't recall anything like that.

\* \* \*

Q. Okay. Is there an understanding that the newspapers will be sold on city streets? I mean, literally on the streets, not necessarily on the corners. But these gentlemen and women will interact with the traffic, the stopped traffic at the lights and make the sales?

A. Is the understanding—I'm not sure what you mean by that.

Q. Well, is that something that you know happens or—

A. I mean, I have been on street corners myself in the City of Philadelphia and I see Hawkers out there and when the light turns red you will see them handling the paper and seeing if somebody wants to buy the paper, sure.

Q. If you drive in the city—

A. You see it.

Q. —it's a common experience?

A. Yeah.

Q. That's what I mean. Is there anything that the newspapers does to restrict how they sell or to educate them how to sell or do anything to give them instructions on what needs to be done during the sales?

A. I believe that's all up to the independent—up to these folks, the counselors.

Q. Has there ever been a situation where the newspaper has instructed the Hawkers or the counselors not to sell in a certain location?

A. Not to my knowledge. Absolutely not.

Dep. of Lehmen, 9/25/08, at 13-18.

On June 13, 2011, the trial court granted the Daily News's motion and dismissed Ms. Hueitt's claims against the Daily News only. Order, 6/13/11. The order did not express "that an immediate appeal would facilitate resolution of the entire case." **See** Pa.R.A.P. 341.

Ms. Hueitt filed a timely notice of appeal on July 7, 2011. On July 22, 2011, the trial court *sua sponte* ordered that "Plaintiff's[ ] case against . . . Timothy Keeley is non-prossed." Order, 7/22/11.

***Hueitt I***, at 3-4 (footnote omitted).

The trial court's Pa.R.A.P. 1925(a) decision stated that Daily News did not owe a duty of care to Hueitt. Trial Ct. Op., 8/2/11, at 3-4; ***accord*** Trial Ct. Op., 10/7/13, at 3-4. The trial court reasoned as follows:

> Generally, where the defendant and plaintiff are strangers, a [c]ourt applies a general duty of care required of all persons to not place another at an unreasonable risk of harm by way of their actions.
>
> Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time.
>
> The facts herein reveal that the newspaper hawker was standing in the intersection of the street. It was Ms. Hueitt who drive towards him and then stopped her vehicle. Where the parties are strangers to each other[,] the scope of general duty of care is limited to those risks which are reasonably foreseeable. . . . In this case, Ms. Hueitt did not present anything in these facts to put a newspaper hawker on notice that Mr. Vargas would drive in a negligent manner.

Trial Ct. Op., 8/2/11, at 3 (citations omitted).

The ***Hueitt I*** panel quashed the appeal because outstanding claims existed as between Hueitt and Vargas and between Vargas and Daily News. Subsequently, the court entered an order—prepared by the parties—that essentially resolved the outstanding claims.[5] Order, 8/14/13. Hueitt timely

---

[5] The order effectively preserved the parties' abilities to proceed on any claims if Hueitt successfully appealed. Vargas did not explicitly discontinue and end his negligence cross-claim against Daily News. All parties essentially agreed, however, that no outstanding claims remain. ***See***

appealed. The court did not order her to comply with Pa.R.A.P. 1925(b), but filed a Rule 1925(a) decision.

Hueitt raises the following issues:

> Did the trial court err when it found . . . Daily News had no duty to Ms. Hueitt when it created the unsafe condition that led to her motor vehicle accident by creating and implementing its "hawker program"?
>
> Did the trial court err when it failed to find that the [peculiar] risk doctrine applied to the sales practice created by . . . Daily News' "hawker program" contract with vendor Keeley?

Hueitt's Brief at 4.

We summarize Hueitt's arguments for both of her issues. She broadly contends the trial court erred by not creating a duty. Hueitt also argues that the peculiar risk doctrine applies. She contends that selling newspapers at an intersection is inherently risky. *Id.* at 19. Hueitt maintains that this risk arises from the nature or the manner of performance of selling newspapers at an intersection. *Id.* She states that Keeley, as an independent contractor, recognized this risk at the time he hired the hawker. *Id.* at 19-20. Hueitt cites several sections of the Vehicle Code and other regulations that purportedly recognize that a pedestrian on a roadway is a hazard. She

---

Pa.R.A.P. 341; *Levitt v. Patrick*, 976 A.2d 581, 588 (Pa. Super. 2009) ("The Pennsylvania Rules of Civil Procedure permit a party to 'commence a second action upon the same cause of action' after a discontinuance. Pa.R.C.P. 231.").

opines that Daily News was aware that hawkers sold newspapers at an intersection and thus should be held liable. We hold Hueitt is due relief.

In **Charlie v. Erie Ins. Exch.**, 100 A.3d 244 (Pa. Super. 2014), we set forth the well-settled standard of review:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

**Id.** at 250 (citation and punctuation omitted).

The **Charlie** Court also discussed the non-exclusive five-factor test for identifying the existence of a duty:

> A duty arises **only** when one engages in conduct which foreseeably creates an **unreasonable** risk of harm to others.
>
> *       *       *
>
> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution . . . .

**Charlie**, 100 A.3d at 250-51 (citations and punctuation omitted).

In ***Edwards v. Franklin & Marshall Coll.***, 663 A.2d 187 (Pa. Super. 1995), Edwards was a construction worker and employee of Benchmark Construction Company. ***Id.*** at 188. Franklin & Marshall College ("Franklin"), hired Benchmark for some roof renovation. ***Id.*** Edwards fell through the roof, was injured, and sued Franklin; Franklin moved for summary judgment on the basis that Edwards, as an employee of independent contractor Benchmark, could not recover. ***Id.*** at 189.

The ***Edwards*** Court explained the peculiar risk doctrine, as follows:

> The established law in Pennsylvania provides that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. One exception to this rule provides that an employer may be liable for the negligence of its employee/independent contractor where the work to be performed by the independent contractor involves a special danger or peculiar risk.
>
> The Peculiar Risk Doctrine denotes a concept of employer nonliability as set forth in sections 416 and 427 of the Restatement (Second) of Torts:
>
> > **§ 416. Work Dangerous in Absence of Special Precautions**
> >
> > One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

**§ 427. Negligence as to Danger Inherent in the Work**

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precaution against such danger.

\* \* \*

[A] special danger or peculiar risk exists where:

1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, i.e., a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measures; and

2) the risk is different from the usual and ordinary risk associated with the general type of work done, i.e., the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary.[6]

---

[6] In **Ortiz v. Ra-El Development Corp.**, 528 A.2d 1355 (Pa. Super. 1987), the Court explained this second prong "involves a two-step analysis":

First, we examine the risk that would be posed by the general type of work to be performed under typical circumstances. . . . Next, we determine whether the circumstances under which the general work is done, i.e., the specific project or task, introduces a different kind or level of risk.

**Id.** at 1358.

This Court has further stated that the key to the proper application of the two Restatement sections lies in the definition of a "peculiar risk" or a "special danger."

**The risk of harm must arise from the peculiar or inherent nature of the task or the manner of performance, and not the ordinary negligence which might attend the performance of any task.** Liability does not ordinarily extend to so called "collateral" or "casual" negligence on the part of the contractor in the performance of the operative details of the work. The negligence for which the employer of a general contractor is liable must be such as is intimately connected with the work authorized and such as is reasonably likely from its nature.

Stated differently, the definition of "peculiar risk" or "special danger" requires that the risk be recognizable in advance and contemplated by the employer of the independent contractor at the time the contract was formed and that it must not be a risk created solely by the contractor's "collateral negligence" i.e., negligence consisting wholly of the improper manner in which the contractor performs the operative details of the work.

[B]ecause the Peculiar Risk Doctrine is an exception to a general rule, it should be viewed narrowly. As this Court has stated:

. . . In order for the liability concepts involving contractors to retain any meaning, . . . peculiar risk situations should be viewed narrowly, as any other exception to a general rule is usually viewed.

*Id.* at 189-91 (emphasis in original and punctuation and some citations omitted).

Pursuant to the two-prong test set forth above, the ***Edwards*** Court first ascertained whether "a reasonable person, in the position of the employer, [would] foresee the risk and recognize the need to take special

measures." *Id.* at 191. The **Edwards** Court stated the trial court found that both Franklin and Benchmark were aware of the "deteriorating and dangerous nature of the roof." *Id.* Thus, the first step was met. *Id.* The second step, however, was not met because Benchmark was in the business of renovating commercial structures, including roofs, and the risk of falling through the roof was apparent. *Id.* The risk of falling through a roof while renovating the roof was not a risk "substantially out-of-the-ordinary" such that it meets the definition of a "peculiar risk" or a "special danger." *Id.* Accordingly, the **Edwards** Court affirmed the grant of summary judgment in favor of Franklin as Edwards failed to invoke the narrow exception to the general rule that "an employer of an independent contractor is not liable for injuries caused by the negligence of the contractor or its servants." *Id.* at 188.

Instantly, Daily News challenged whether it owed a duty to Hueitt because it employed an independent contractor who, in turn, hired hawkers to sell its newspapers. **See** Daily News' Mot. for Summ. J., 4/29/11, at 3. As set forth above, Hueitt contested Daily News' allegations and countered that Daily News could not escape liability under the independent contractor doctrine. **See** Hueitt's Opp'n to Daily News' Mot. for Summ. J., 5/26/11, at 2-3. Hueitt further cited exhibits that when viewed in the light most favorable to her, sufficiently identify material issues of fact as to whether a newspaper vendor could reasonable anticipate a traffic accident would result

from selling newspapers on the streets. *See id.* at 4-5, 7; *see also* Dep. of Lehmen, 9/25/08, at 13-18.

Moreover, similar to *Edwards*, Hueitt cited testimony establishing Daily News' awareness that hawkers sold newspapers on street corners and accidents could occur. *See, e.g.*, Dep. of Lehmen, 9/25/08, at 13-18. Thus, unlike *Edwards*, Hueitt identified material issues of fact regarding whether Daily News foresaw the risk and whether it differed from the usual and ordinary risk involved in selling newspapers. *See Edwards*, 663 A.2d at 191. Accordingly, after viewing the record in Hueitt's favor, we reverse the grant of summary judgment in favor of Daily News and remand for further proceedings. *See Charlie*, 100 A.3d at 250.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2015