J-A18011-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| MCMP INC., D/B/A MARSICO CONSTRUCTION SERVICES AND LOUIS S. MARSICO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| BRUCE H. GELMAN, ESQUIRE AND LAW OFFICES OF BRUCE H. GELMAN, LLC, AND RICHARD AND TINA-MARIE COLLIER, INDIVIDUALLY AND AS HUSBAND AND WIFE | |
| Appellants | No. 1386 WDA 2016 |

Appeal from the Judgment Entered August 15, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): AR 13-003184

BEFORE:   BOWES, LAZARUS, AND OTT, JJ.

MEMORANDUM BY BOWES, J.:                    FILED OCTOBER 26, 2017

Bruce H. Gelman, Esquire and the Law Offices of Bruce H. Gelman, LLC, and Richard and Tina Marie Collier (collectively "Law Firm"), appeal from the judgment entered on August 15, 2016, on the non-jury verdict in favor of MCMP Inc. d/b/a Marsico Construction Services and Louis S. Marsico (collectively "Marsico").[1]   At issue is a contract for expert construction services for purposes of litigation.   The trial court found that Marsico's
_____

[1] Appellants' appeal, filed within thirty days of the date when final judgment was entered on the non-jury verdict, is timely.

engagement letter was an enforceable agreement between Law Firm and Marsico, that Law Firm breached the agreement when it refused to pay the amount of the bill, and that Law Firm owed Marsico $20,000.[2] After review, we affirm.

An insurance dispute gave rise to the instant lawsuit. A tornado damaged the home of the Colliers. The Colliers maintained that their homeowner's carrier had an obligation to pay damages in excess of policy limits on two theories: that the property was underinsured due to the negligence of the insurer, and that the insurer acted in bad faith during negotiations with its insureds. They sought damages under the policy, damages for bad faith, and treble damages pursuant to the Unfair Trade Practices and Consumer Protection Law. In order to prove entitlement to relief in that action, the Colliers' lawyer, Bruce Gelman, retained Marsico to evaluate the cost of repairing the Collier home and the cost of rebuilding the home. Mr. Marsico provided the Law Firm with a report, which the Law Firm accepted. The Law Firm refused to pay the amount of Marsico's invoice.

When the parties could not resolve their dispute over the cost of the report, Marsico demanded that the Law Firm not utilize the report in the underlying insurance litigation. The Law Firm had given the report to the

_____

[2] The court did not award the full amount sought by Marsico.

insurer but then withdrew it and did not procure a substitute expert. The underlying dispute settled at mediation for $1.3 million.[3]

Marsico filed a complaint for breach of contract on July 25, 2013, seeking damages of $29,797.05. Marsico sought recovery under the terms of a written engagement letter, which provided for payment based on the hourly rate of the employees. The Law Firm did not dispute that it agreed to pay based upon the hourly rate of Marsico employees. However, the Law Firm contended that the writing was not fully integrated. It maintained that there was an oral agreement with Marsico that such services would be in the ballpark range of $7,500- $10,000, and that the invoice for three times that upper limit did not reflect the parties' agreement. It filed a counterclaim alleging that Marsico agreed to perform the expert services for an amount ranging from $7,500 to $10,000, and that it did not owe the nearly $30,000.

At trial, the following facts were adduced. Attorney Gelman testified that he was looking for an expert who could provide a report and, if needed, testimony, regarding the costs associated with both rebuilding and repairing the Colliers' damaged home. He met Mr. Marsico in January 2013, and they spent approximately one or two hours at the home. He pressed Mr. Marsico

_____

[3] The Law Firm maintained that, if it had been permitted to utilize the Marsico report, its demand would have been $2.5 million instead of $1.9 million. N.T. Vol. I, 5/25/16, at 108.

for a ballpark figure as to the cost of preparing a report with the required information, and "He told me $7,500 to $10,000." N.T. Vol. I, 5/25/16, at 14. Marsico sent him an engagement letter several days later, which set forth the hourly rates for each employee's services, and which made no mention of the ballpark estimate. In response to the engagement letter, the Law Firm sent documents to Marsico, including the estimates of the insurance company's expert and the public adjustor, to assist Marsico in getting started. The report was due April 1, 2013.

Mr. Marsico maintained that the agreement was always hourly. Attorney Gelman agreed, admitting that, "I didn't think it was a flat-fee agreement. I thought he was going to charge me hourly. He told me his rate was 235 for sure . . . I expected that he would work as many hours until he hit between 7,500 and 10 grand . . . He gave me a range." Id. at 16. According to Mr. Marsico, the bill exceeded the rough estimate because the scope of work changed after the initial meeting to include construction plans and estimates of the cost of code upgrades for repairs.

Following a two-day non-jury trial, the court entered a verdict in favor of Marsico and against the Law Firm in the amount of $20,000, and in favor of Marsico on the counterclaim. The trial court found the engagement letter was an enforceable written hourly fee agreement for services. Although the charges exceeded the original ballpark estimate of $7,500 to $10,000, the court concluded "the amount awarded is justified by the efforts made by

Marsico and MCMP Inc. in furtherance of the Colliers' litigation, and at Gelman's direction." Trial Court Opinion, 12/8/16, at 9. In arriving at its disposition, the trial court relied upon Mr. Gelman's acknowledgement that he "definitely knew" that Marsico and his employees were working on an hourly basis, and further, his admission that he was prepared to receive a bill in excess of $10,000, but that he never imagined that the bill would be double the original estimate. N.T. Vol. I, 5/25/16, at 89-90. The Court ruled in favor of Marsico on the counterclaim, finding no breach of contract or misrepresentation on the part of Marsico.

The Law Firm filed a timely motion for post-trial relief, which was denied on August 11, 2016, after oral argument and briefs. Judgment was entered on the verdict on August 15, 2016. The Law Firm appealed to this Court on September 9, 2016, and complied with the trial court's order to filed a concise statement of errors complained of on appeal. Upon receipt of the transcript, the trial court penned its Rule 1925(a) opinion.

Appellants present one issue for our review: "Did the trial court err when it determined that (i) [the Law Firm] breached the contract, (ii) [Marsico was] entitled to $20,000 in contract damages, and (iii) [the Law Firm] failed to meet [its] burden on [its] counterclaims, where the trial court's verdict was not supported by sufficient competent evidence adduced at trial." Appellants' brief at 4.

In reviewing the findings of a trial court sitting as the finder of fact, we must "determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of the law." Levitt v. Patrick, 976 A.2d 581, 588-89 (Pa.Super. 2009). The findings of the trial judge must be given the same weight and effect on appeal as the jury verdict. Id. at 589. We will consider the evidence in the light most favorable to the verdict winner. We may reverse the denial of a motion for new trial only if the trial court abused its discretion or committed an error of law. Id.

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." 412 N. Front St. Assocs. v. Spector Gadon & Rosen, P.C., 151 A.3d 646, 657 (Pa.Super. 2016) (quoting Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)). Whether a set of facts establishes a contract is a legal determination. See Refuse Mgmt. Sys., Inc. v. Consol. Recycling & Transfer Sys., Inc., 671 A.2d 1140, 1146 (Pa.Super. 1996).

The Law Firm acknowledges that there was a contract with Marsico. It argues that Marsico offered to prepare the expert report for $7,500 to $10,000, and that it accepted. The Law Firm challenges the court's finding that the engagement letter was the sole agreement as it contained no

- 6 -

integration clause, was not signed by Mr. Gelman, and the terms were incomplete and ambiguous. The Law Firm contends that the engagement letter merely filled in an hourly rate for the work, and that Mr. Gelman would never have agreed to pay almost $30,000 for a report. It contends that Marsico breached the agreement when it charged well in excess of the $10,000 estimate for the report.

The record supports the trial court's finding that the Law Firm accepted the hourly terms set forth in the engagement letter. Although Attorney Gelman did not sign the engagement letter, he admitted that the parties agreed that the services would be billed on an hourly basis. In response to the engagement letter, the Law Firm forwarded documents for Marsico's review. The conduct of the parties established acceptance of the contract terms. See Beaver Valley Alloy Foundry, Co. v. Therma-Fab, Inc., 814 A.2d 217 (Pa.Super. 2002) (establishing acceptance by the outward and objective manifestations of assent).

The Law Firm argues that the oral estimate constituted an offer that was accepted and enforceable. In support of that contention, it relies upon our decision in Western Newspaper Union v. Shaltz, 64 A.2d 493 (Pa.Super. 1949), where a written estimate was found to be an express contract. However, the facts in that case are readily distinguishable. Plaintiff sought relief on a quantum meruit theory; the defense pled that the plaintiff expressly agreed in writing to furnish the service in dispute for

"approximately $5.00 per week." Id. at 494. The court found that the latter writing constituted an express contract, and rejected plaintiff's attempt to use quantum meruit to effect a higher recovery. The issue on appeal was whether the evidence sustained the finding of an express contract, giving the defendants the benefit of all reasonable inferences from the evidence. This Court affirmed, finding that whether the written estimate constituted an offer, or negotiations leading up an offer, did not matter as the parties orally agreed to all items constituting the estimate. It concluded further that, there was no intention to reduce the agreement to writing. "When the plaintiff did not repudiate or withdraw its offer upon the defendants' acceptance, a valid contract was made, based on the oral proposals." Id. at 495. We sustained the court's finding that the estimate was an express contract.

Herein, in contrast to Western Newspaper Union, supra, we have an off-the-cuff oral estimate proffered "following an hour-long examination of the site on a cold day in late January." Trial Court Opinion, 12/8/16, at 7. The court expressly rejected the Law Firm's contention that the estimate was an express contract term. The ballpark figure was followed by a written engagement letter that specifically outlined an offer to perform expert consulting services on an hourly fee basis, which the Law Firm admittedly accepted. Having heard testimony regarding the circumstances surrounding the cursory estimate, the court concluded that it was not contractually

binding and rejected the notion that the parties agreed to cap payment at $10,000. In further support thereof, the court pointed to Mr. Gelman's concession that he agreed to pay a higher amount when Marsico advised him that the bill would exceed the original estimate; he just never imagined that the bill would be double the original estimate.

It was undisputed that Marsico performed its duties under the contract. Attorney Gelman testified that Mr. Marsico "did exactly what I asked him to do, and it looked like a good report to me." N.T. Vol. II, 5/25/16, at 38. The Law Firm accepted the report, tendered it to opposing counsel and the insurance company, and then refused to pay Marsico the fee for the report, which was calculated on an hourly basis per the engagement letter. On these facts, the court found that the Law Firm breached the agreement.

The trial court also determined that no relief was due on the Law Firm's counterclaim as there was no agreement to provide a report for less than $10,000. Furthermore, it rejected Law Firm's contention that the underlying case settled for a lower amount because it did not have an expert report. Crediting expert testimony offered by Marsico to the effect that the court in the underlying case would have granted an extension to enable the Law Firm to obtain a new expert since the case was not listed for trial, the court specifically found that the Law Firm had sufficient time to procure another expert had it attempted to do so. Consequently, the finder of fact

rejected the Law Firm's claim that it suffered damages in the nature of a diminished settlement value due to its inability to utilize Marsico's report.[4]

Based on the record before us, we find no abuse of discretion or error of law that would warrant a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/26/2017

_____

[4] Marsico suggested at oral argument that the Law Firm reaped some benefit from the expert report as it had tendered a copy of the report to the insurance company prior to the mediation.