J-A32022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PLASTERER EQUIPMENT CO., INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGIONAL ORTHOPEDIC | : | No. 1137 MDA 2017 |
| ASSOCIATES, P.C. | : | |

Appeal from the Judgment Entered August 2, 2017
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2015-00732

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 07, 2018**

Appellant, Plasterer Equipment Co., Inc. appeals from the August 2, 2017 Judgment in favor of Regional Orthopedic Associates, P.C. ("Appellee") entered in the Lebanon County Court of Common Pleas following a non-jury trial. After careful review, we vacate and remand with instructions.

The facts and procedural history, as gleaned from the record, are as follows. In January 2012, Appellee, through its representative Dr. Lance Yarus,[1] purchased a 2011 John Deere front-end loader ("2011 Loader") and loader attachments from Appellant for $116,091.20. To finance the purchase, Yarus entered into a Loan Contract-Security Agreement ("Loan")

_____

[1] At all relevant times, Yarus was acting as Appellee's representative.

_____

*   Retired Senior Judge assigned to the Superior Court.

with John Deere Financial.[2]  Appellee agreed that John Deere could place a lien on the 2011 Loader to secure the Loan ("John Deere Lien").

The Loan provided for 60 monthly payments of $2,206.88.[3]  Yarus made 30 of the 60 payments before deciding, in August 2014, to trade in the 2011 Loader for a different model.  Appellee still owed $66,206.40 on the Loan for the purchase of the 2011 Loader.

On August 22, 2014, Appellee purchased a 2013 John Deere front-end loader ("2013 Loader") from Appellant.  The 2013 Loader cost $71,423, and Appellant gave Appellee a $57,000 credit for the trade in of the 2011 Loader.  Appellee paid the balance—$15,288.38[4]—in cash.

The August 22, 2014 Customer Purchase Order ("CPO"), signed by Yarus, documented the purchase of the 2013 Loader.[5]  In the "Acknowledgement" section of the CPO, Appellee represented that he was trading in the 2011 Loader "**free and clear of all security interests, liens, and encumbrances at the time of transfer to** [**Appellant.**]"  CPO,

---

[2] John Deere Financial is not a party to this appeal.

[3] Yarus financed a total amount of $132,412.80, which included the sale price of the 2011 Loader plus interest.

[4] This amount represents the balance due on the 2013 Loader plus applicable sales tax.

[5] Appellee refers to the CPO as "the contract" in his Brief to this Court. Appellee's Brief at 6-9.  Implicit in Appellee's argument is his acknowledgement that he is bound by its terms.

8/22/14 (emphasis added). The CPO also provided an area for the parties to note any item excluded from this representation; the parties did not note any excluded item.

Notwithstanding Appellee's signed acknowledgement, and unbeknownst to Appellant, Appellee had not satisfied the John Deere Lien on the 2011 Loader when Appellee traded in the 2011 Loader and, in fact, represented the opposite: that he was selling the 2011 Loader free and clear of all liens. Thus, at the time Appellee traded in the 2011 Loader it remained subject to the John Deere Lien in the amount of the outstanding balance on the Loan—$66,206.40.

Without clear title, Appellant could not resell the 2011 Loader. Therefore, on August 27, 2014, Appellant paid John Deere Financial $60,020.89 to satisfy the John Deere Lien and clear the title to the 2011 Loader, so that Appellant could resell.[6] On March 12, 2015, Appellant notified Appellee by letter that Appellee's trade-in of the 2011 Loader did not comply with the provision of the CPO for the 2013 Loader wherein Appellee represented that "each 'trade-in' item shall be free and clear of all security interests, liens, and encumbrances at the time of transfer to the dealer." Letter, 3/12/15. Appellant attached an invoice reflecting payment due from

---

[6] On April 14, 2015, Appellant resold the 2011 Loader for $64,000.

Appellee in the amount of $60,020.89—the amount Appellant paid to satisfy the John Deere Lien on the 2011 Loader for resale.[7]

Appellee, through counsel, responded by letter dated March 20, 2015, stating that he had paid Appellant in full for the 2013 Loader, and rejecting Appellant's assertion that he was responsible for reimbursing Appellant for the satisfaction of the John Deere Lien. *See* Letter, 3/20/15.

On April 24, 2015, Appellant filed a four-count Complaint against Appellee seeking damages of $60,020.89 for reimbursement for the satisfaction of the John Deere Lien. Appellant raised two Breach of Contract claims, and one claim each for Reformation/Rescission of Contract Due to Mistake and Unjust Enrichment. Of particular note, in the first count of Appellant's Complaint, it alleged that Appellee breached the CPO "since the trade-in was subject to a lien and security interests of John Deere Financial." Complaint, 4/14/15, at ¶ 20.

On May 22, 2015, Appellee filed an Answer to the Complaint and New Matter. Appellant filed a Reply to New Matter on June 2, 2015.

A non-jury trial commenced on Appellant's claims on November 8, 2016, at which Appellants' employees, Jeremy Walborn, William Shutter, Gregory Clements, and Michael Kernan, testified. At the close of Appellant's case, Appellee made an oral Motion for a compulsory nonsuit pursuant to

---

[7] There is nothing in the record explaining the discrepancy between the $60,020.89 Loan payoff amount and the $66,206.40 Loan balance.

Pa.R.C.P. No. 230.1.[8]  The court denied the Motion, but also directed the parties to brief the issues raised by Appellee in the Motion.  Appellee then presented his case-in-chief consisting only of his own testimony.  Following trial, the parties submitted briefs to the court as ordered.  On March 6, 2017, the court entered a verdict in Appellee's favor.

The court issued an Opinion in support of the verdict, explaining that it concluded that Appellee had not breached the CPO because: (1) the Loan payoff was not listed on the CPO as part of the transaction; (2) the CPO released Appellee of the duty to continue to make payments on the 2011 Loader Loan; and (3) the parties were of like minds that Appellee wanted a zero-balance deal.  Trial Ct. Op., 3/6/17, at 9, 13.  It does not appear that the court considered the plain language of the CPO in reaching its conclusion.

Appellant filed a timely Post-Trial Motion, which the court denied on July 5, 2017.

_____

[8] Pa.R.C.P. 230.1 provides, in relevant part, that the trial court "may enter a nonsuit on any and all causes of action if, at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief."  Pa.R.C.P. 230.1(a)(1).  In so doing, the court shall consider "only evidence which was introduced by the plaintiff and any evidence favorable to the plaintiff introduced by the defendant prior to the close of the plaintiff's case."  Pa.R.C.P. 230.1(a)(2).

This timely appeal followed.[9]  Appellant complied with the trial court's Order directing that it file a Pa.R.A.P. 1925(b) Statement.  The trial court did not file a Pa.R.A.P. 1925(a) Opinion.

Appellant raises the following issues on appeal:

[1.]  Whether the [t]rial [c]ourt erred as a matter of law in finding []Appellee did not breach the 2014 agreement with []Appellant since, contrary to the express language of the agreement, the trade-in equipment was subject to a lien[?]

[2.]  Whether the [t]rial [c]ourt erred as a matter of law in not finding []Appellee breached the loan contract-security agreement of 2012 and not ordering []Appellee to pay the balance due under that contract together with costs and counsel fees[?]

[3.]  Whether the [t]rial [c]ourt erred in finding that []Appellant assumed, released, or forgave the debt associated with the trade-in equipment of []Appellee[?]

Appellant's Brief at 4.

When reviewing a trial court's decision after a non-jury trial, our standard of review is well-established.  "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.  As fact finder, the judge has the

---

[9] We observe that Appellant improperly filed its appeal from the Order denying its Post-Trial Motion.  **See Prime Medica Assoc. v. Valley Forge Ins. Co.**, 970 A.2d 1149, 1154 n6 (Pa. Super. 2009) (stating an order denying post-trial motions is interlocutory and not appealable until entry of final judgment).  However, on August 2, 2017, the trial court prothonotary entered judgment on the court's verdict, thus, perfecting Appellant's appeal.  **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

authority to weigh the testimony of each party's witnesses and to decide which are most credible." ***Parker Oil Co. v. Mico Petro and Heating Oil, LLC***, 979 A.2d 854, 856 (Pa. Super. 2009) (citation omitted). The trial judge's findings must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. ***Levitt v. Patrick***, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we consider the evidence in the light most favorable to the verdict winner." ***Id.*** (citation omitted).

In its first issue, Appellant claims that the trial court erred as a matter of law in concluding that Appellee did not breach the CPO by trading-in the 2011 Loader while it was subject to the John Deere Lien. Appellant argues that by entering into the sales contract, Appellee clearly and unequivocally warranted that the 2011 Loader was free and clear of security interests, liens, and encumbrances. Appellant's Brief at 14. Appellant avers that, in finding in favor of Appellee on the Breach of Contract claim, the court ignored the plain language of the parties' written agreement. ***Id.*** at 15.

In contrast, Appellee argues that the CPO released him from its obligation to satisfy the Loan for the 2011 Loader because the discontinuation of payments on the Loan was a "feature of the 2014 contract." Appellee's Brief at 7-9. Appellee premises this argument not on

the language of the CPO itself,[10] but rather on the trial testimony and the court's factual findings.

Appellant's issue requires this Court to interpret the contract between the parties. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority***, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citation omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision." ***Id.*** (citation omitted).

Our Supreme Court has set forth the principles governing contract interpretation as follows:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. When . . . the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

---

[10] This Court's review of the CPO reveals that it does not contain any language releasing Appellee from its obligation to satisfy the John Deere Lien, and Appellee does not direct this Court to any such language.

***Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.***, 905 A.2d 462, 468-69 (Pa. 2006) (citations omitted).

Following our review of the CPO, we conclude that its terms clearly and unambiguously indicated that the parties intended that Appellee would trade-in the 2011 Loader free and clear of all security interests, liens, and encumbrances.

Here, as noted ***supra***, the CPO signed by Appellee included a section titled "Acknowledgements," which contained language indicating that Appellee acknowledged that he was trading in the 2011 Loader "free and clear of all security interests, liens, and encumbrances at the time of transfer to [Appellant.]" CPO, 8/22/14. The CPO also provided an area for the parties to note any item excluded from this representation. Neither Appellant nor Appellee indicated on the CPO that they intended to exclude the 2011 Loader from its "free-and-clear" provision. Thus, Appellee warranted that, at the time of the trade-in, the 2011 Loader was free and clear of all security interests, liens, and encumbrances. As it turned out, this representation was patently false because Appellee had not satisfied the John Deere Lien. Appellee's misrepresentation resulted in damages to Appellant of $60,020.89, representing the amount Appellant paid to John Deere to satisfy the John Deere Lien and clear the title of the 2011 Loader for resale.

Accordingly, we find that the trial court erred as a matter of law in concluding that Appellee did not breach the parties' contract and in entering a verdict for Appellee.[11]

Judgment vacated. The trial court prothonotary is directed to enter judgment in favor of Appellant in the amount of $60,020.89 plus any other fees and costs as the court deems reasonable. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/07/2018

---

[11] In light of our disposition of Appellant's first issue, we need not reach the merits of Appellant's remaining issues.