J-A14017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELLIOTT GREENLEAF, P.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD C. DEMARCO | : | |
| | : | |
| Appellant | : | No. 2862 EDA 2022 |

Appeal from the Judgment Entered October 25, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2018-08557

BEFORE:  PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 1, 2023**

Appellant, Richard C. DeMarco, appeals from the entry of judgment in favor of Elliott Greenleaf, P.C., in this declaratory judgment action arising from a dispute over payment of a $11,330,804.15 legal referral fee.  After careful review, we affirm.

The relevant facts and procedural history, as gleaned from the certified record, including the trial court's factual findings set forth in its September 2, 2022 Findings of Fact and Conclusions of Law ("FFCL") and its December 28, 2022 Opinion, are as follows.  On November 11, 2011, Elliott Greenleaf, P.C. ("EG") hired Appellant as "of counsel."  EG paid Appellant a set salary and a discretionary bonus.  EG did not permit Appellant to have a "side practice" and Appellant agreed to devote his full-time efforts to the firm.  The terms of Appellant's employment with EG did not entitle Appellant to a fixed percentage of fees from business origination.

In 2014, when Appellant was a full-time employee of EG, Appellant learned about the catastrophic injury that a minor, Z.G., suffered in a propane tank explosion and that her family was looking for a lawyer to represent her interests. Z.G.'s brother, Eddie, contacted Appellant to obtain representation. Appellant then notified EG attorneys Frederick Santarelli and Dean Phillips about the case.[1] In turn, Attorney Phillips contacted Benjamin Baer, Esquire, an associate at Saltz, Mongeluzzi, Barrett & Bendesky, P.C. ("SMBB"), a firm that specializes in catastrophic personal injury cases, about representing Z.G. Attorney Phillips and Attorney Baer, Appellant and SMBB partner Andrew Duffy met to discuss EG's potential referral of the case to SMBB.

**The Contingent Fee Agreement Between Eddie and EG**

Meanwhile, Attorney Phillips interacted with Eddie about entering into an agreement with EG to handle the case.[2] Attorney Phillips prepared a standard EG Contingent Fee Agreement and Power of Attorney for Eddie to sign on behalf of Z.G. as her guardian. Attorney Phillips gave the fee agreement to Appellant for Eddie's signature. In July 2014, Eddie signed the fee agreement as "Guardian-In-Fact of Minor Immigrant." Appellant was not a party to the fee agreement.

---

[1] Attorney Phillips was responsible for screening and intake of new tort cases at Elliott Greenleaf.

[2] Attorney Phillips dealt with Eddie at this time because Z.G. was still a minor and was hospitalized.

**The Referral Fee Agreement Between EG and SMBB**

Shortly thereafter, SMBB Attorney Baer and EG Attorney Phillips had a telephone conversation about the referral fee for Z.G.'s case. On August 6, 2014, Attorney Phillips sent Attorney Baer an email memorializing the referral fee arrangement between the law firms. In the email, Attorney Phillips stated, in relevant part, "Ben, can you please confirm in writing our fee agreement in the [Z.G.] matter? My understanding is that you have agreed to pay my firm 1/3 of the legal fee unless the legal fee itself is 40% in which case my firm's share of the fee is 40%. We have also agreed that your firm will keep us in the loop on significant developments and that we will continue to interact with the Gabriel family?" Email, 8/6/14.

Later that same day, Attorney Baer replied by email to Attorney Phillips confirming the details of the referral agreement as set forth by Attorney Phillips. Appellant was not even mentioned, let alone given any legal rights to the referral fee in this agreement.

**The Contingent Fee Agreement Between SMBB and Z.G.**

After EG referred Z.G.'s case to SMBB, Eddie signed a contingent fee agreement with SMBB on Z.G.'s behalf. On November 7, 2014, Z.G., who had turned 18, signed a SMBB contingent fee agreement. That agreement stated: "If you have been referred to our Firm by another attorney, our Firm may divide our fee for legal services with the referring attorney. You, as the client, are only responsible to pay one fee to both our Firm and the attorney who

referred you to our Firm."[3]  Eddie and Z.G. were aware that there was a referral fee for this case and never objected to it or the payment of it to EG. Appellant is not mentioned, let alone given any legal rights to the referral fee in the contingent fee agreement between SMBB and Z.G.

**The December 1, 2016 Letter**

On December 28, 2016, Appellant voluntarily terminated his employment with EG.  Prior to terminating his employment, however, Appellant drafted a letter for Z.G.'s approval, dated on December 1, 2016, purporting to end her attorney-client relationship with EG and indicating that she intended for Appellant to continue to represent her.  The letter also asserted that Z.G. would like Appellant to receive compensation upon the conclusion of the litigation being handled by SMBB.

Z.G., however, did not sign and return this letter to Appellant until sometime in the summer of 2017.  Similarly, Appellant did not provide a copy of this letter to EG or SMBB for another year, in May 2018, when Appellant filed a complaint against EG.

In connection with leaving EG's employ, in late 2016, Appellant also spoke with Attorney Santarelli, who was then EG's president.  Appellant informed Attorney Santarelli that he was leaving EG and going to a new firm. With respect to Z.G.'s case, Appellant prepared an exit memo reflecting Z.G.'s

---

[3] Attorney Baer testified that the expression "by another attorney" was standard language used in SMBB's contingent fee agreements whether the referral came from an individual attorney or a law firm.  N.T. Trial, 7/11/22, at 102-104.

purported interest in continuing to work with Appellant at his new firm and asserting that he had an interest in the SMBB referral fee. Santarelli and Appellant did not reach an agreement about Appellant's interest in the referral fee before Appellant departed EG at the end of 2016.

After he left EG, Appellant continued to assist Z.G. and Eddie with other matters including their financial situation regarding high-interest loans, their depositions in the personal injury matter, and immigration issues.

On January 29, 2018, Appellant sent an email to Robert J. Mongeluzzi, Esquire, of SMBB stating that he referred Z.G. to SMBB, that he had left EG, that he continued to represent Z.G. and Eddie, and that he wanted to discuss how to appropriately handle payment of the referral among SMBB, EG, and Appellant's new firm.

On April 20, 2018, SMBB settled Z.G.'s case. On April 25, 2018, Attorney Mongeluzzi sent a letter to EG, Attorney Phillips, and Appellant notifying them of the settlement and the expected amount of the referral fee. Attorney Mongeluzzi attached a copy of the August 6, 2014 email between Attorney Phillips and Attorney Baer which Attorney Mongeluzzi identified as "the referral agreement between our firms."

On May 1, 2018, EG filed a Complaint seeking a declaratory judgment against Appellant to establish its right to payment of the referral fee from SMBB. EG asserted that because Appellant was not a party to the referral agreement between EG and SMBB or the contingent fee agreement between SMBB and Z.G., he had no contractual right to the referral fee.

The next day, Appellant filed a complaint seeking declaratory relief against EG.[4]  Appellant asserted that he was entitled to the referral fee claiming that Z.G. had discharged EG as her counsel when she followed Appellant to his new firm.  Appellant also asserted that EG had failed to perform under the terms of the referral agreement with SMBB which required EG to continue to interact with Z.G.'s family.

On March 26, 2019, EG filed a Second Amended Complaint asserting additional tort claims.  On July 11, 2019, Appellant filed an Answer, New Matter and Counterclaim.  EG filed a response to Appellant's New Matter and Counterclaim on July 25, 2019.

On March 30, 2022, EG filed a Motion to Bifurcate Trial requesting that the court decide its declaratory judgment claim and a jury decide its tort claims.  EG asserted that there were no disputed facts for a jury to resolve with respect to the determination of the parties' rights under the referral agreement.  On April 11, 2022, Appellant filed an answer to the motion in which he averred that since the trial court had denied the parties' cross-

_____

[4] Appellant filed his Complaint in the Philadelphia County Court of Common Pleas.  On May 23, 2018, the Montgomery County Court of Common Pleas granted EG's Motion for Coordination, Stay and Transfer of the Philadelphia action.  Appellant appealed from that order, and, on January 22, 2019, this Court affirmed, effectively consolidating the Philadelphia and Montgomery actions in the Montgomery County Court of Common Pleas.

motions for summary judgment there must be disputed factual issues that should be decided by a jury pursuant to the Declaratory Judgments Act.[5]

At the court's direction, Appellant submitted a list of purported material facts in dispute, after which the court held a hearing on EG's motion to bifurcate. At the hearing, EG argued that "this is a simple contract case. . . . The contract at issue is a referral fee. And the referral fee is between [EG] and [SMBB]. And that is memorialized in an August 6, 2014 email[.]" N.T. Hr'g, 6/9/22, at 4-5. EG also argued that Appellant had repeatedly acknowledged in the pleadings and by failing to respond to EG's request for admissions that Appellant is not a party to the referral agreement. Appellant argued that whether Z.G. consented to EG getting the referral fee was the primary material fact in dispute. He did not argue that Z.G. was unaware of the referral fee agreement between EG and SMBB or that she had objected to it.

Following the hearing, the trial court concluded that none of the purported disputed facts were material to the core legal issues in the case. The court identified those issues as: "(1) whether the referral agreement between EG and SMBB is legally enforceable; (2) whether the contingent fee agreement signed by Z.G. with SMBB is legally enforceable; and (3) whether Z.G.'s letter dated December 1, 2016, voided EG's referral agreement with

_____

[5] On February 4, 2020, EG filed a "Motion for Summary Judgment on Count I for Declaratory Relief on the Express Terms of its Written Referral Agreement." Appellant filed an answer and cross-motion for partial summary judgment on March 12, 2020. On July 28, 2020, the trial court denied both motions.

SMBB." Trial Ct. Op., 12/28/22, at 14. The court, therefore, granted EG's motion to bifurcate.[6]

On July 11 and July 12, 2022, the trial court held a bench trial on the parties' cross-motions for declaratory relief. The parties thereafter submitted proposed findings of fact and conclusions of law. On September 2, 2022, the trial court issued findings of fact, conclusions of law, and a declaratory judgment in favor of EG and against Appellant. The court determined that the August 6, 2014 referral agreement was enforceable between SMBB and EG, and, therefore, that Appellant had no legal right to the referral fee. Accordingly, it concluded that EG was entitled to receive the entire referral fee.

Appellant filed a timely post-trial motion and EG filed a motion for prejudgment interest. Following a hearing, the trial court denied both motions and entered judgment in favor of EG.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following six issues on appeal:

> 1. Whether the [c]ourt erred in failing to apply Pennsylvania Rule of Professional Conduct 1.5 to the facts of the case at trial, where the [c]ourt deviated from the plain language of the Rule and ignored portions of the ethics opinion on which it relied, because the client never consented to the original referral agreement; the original referral agreement relied on the client's brother for authority, which he did not possess; the client was never

---

[6] EG withdrew its tort claims prior to trial.

advised of what attorneys would share in the fee or even who the referring attorney was; and when the client was advised of the referral arrangement upon which [Appellant] and [EG] relied, she objected and directed the fee be paid to [Appellant], who she understood to be the referring attorney[?]

2. Whether the [c]ourt erred by limiting this matter to a non-jury trial in Montgomery County, where Pa. Const. art. 1, § 6, 42 Pa. Stat. Cons. Stat. Ann § 7539, Pa.R.C.P. 601(b)[,] and caselaw are consistent on the existence of a right to a jury trial in this matter, in which the parties tried declaratory judgment claims regarding the impairment or enforcement of contractual rights concerning claims to a sum of money, and material facts were disputed, including disputes over whether the client was advised of who would share the divided fee, whether the client objected to [EG's] participation in the divided fee, whether the client terminated [EG], and whether [Appellant] disclosed that the client and her case would go with him when he left [EG?]

3. Whether the [c]ourt erred in finding that the termination of [EG] by the client had no effect, where the December 1, 2016 letter discharged [EG] well before the settlement of the underlying case, [SMBB] had the December 1, 2016 letter well in advance of the settlement and discussed it with the client, and Pennsylvania law holds not only that a lawyer has no possessory interest in a client's case, but in fact requires that a discharged attorney's rights are limited to quantum meruit[?]

4. Whether the [c]ourt erred in permitting [Appellant's] pleading of legal theories to conclusively determine facts, where paragraphs 23, 24, and 26 of [Appellant's] answer and paragraph 42 of [Appellant's] counterclaim, were improperly used to make factual determinations when they are indeterminate, inconsistent, or ambiguous as to facts at issue in light of the testimony and evidence at trial, or are mere conclusions of law[?]

5. Whether the [c]ourt erred in permitting the requests for admission to conclusively determine facts in paragraph 160 of its [d]ecision, where the [c]ourt accepted conclusions of law as to facts with respect to [Appellant's]

- 9 -

relationship with [SMBB] (with respect to number 11), the uncontroverted evidence at trial requires that the interests of justice be served by recognizing that [Appellant] did tell Santarelli that the client wanted [Appellant] to continue to represent her when he left [EG] and thus discharge [EG] (with respect to number 7)[?]

6. Whether the [c]ourt erred in paragraph 25 of the [decision] in finding that the August 6, 2014 email's requirement that [EG] "continue to interact with the Gabriel family" was not a material term of the agreement, which [EG] failed to perform[?]

Appellant's Brief at 5-7.

**A.**

Appellant challenges the trial court's determination that he had no legal right to the referral fee in whole or in part.

When reviewing a trial court's decision in a non-jury trial, our standard of review is well-established. "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weight the testimony of each party's witnesses and to decide which are most credible." *Parker Oil Co. v. Mico Petro and Heating Oil, LLC*, 979 A.2d 854, 856 (Pa. Super. 2009) (citation omitted). The trial judge's findings made after a bench trial must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we

consider the evidence in the light most favorable to the verdict winner." *Id.* (citation omitted).

"The Declaratory Judgments Act empowers courts to declare rights, status, and other legal relations whether or not further relief is or could be claimed and these declarations have the force and effect of a final judgment or decree." *Selective Way Ins. Co. v. Hospitality Group Servs. Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015 (*en banc)* (citations and internal quotation marks omitted). "Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law." *Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa. Super. 2014) (citation omitted).

**B.**

In his first issue, Appellant asserts that the trial court erred in determining that EG is entitled to the referral fee because SMBB and EG violated Pennsylvania Rule of Professional Conduct 1.5(e) ("Rule 1.5(e)"). Appellant's Brief at 24-33. Appellant claims that even though he was not a party to the referral agreement, the alleged violation of Rule 1.5(e) provides a legal basis for his right to the referral fee.

In particular, Appellant argues that EG and SMBB violated Rule 1.5(e) because Z.G. never agreed to the referral agreement between EG and SMBB, the original referral agreement relied on Eddie for authority—which Appellant baldly claims Eddie did not possess—and EG and SMBB did not disclose to Eddie and Z.G. the identities of the lawyers who would share in the fee

generated by Z.G.'s case. *Id.* He also avers that the court erred by disregarding Z.G.'s December 1, 2016 letter objecting to the fee splitting arrangement. *Id.* at 29-30. The trial court properly rejected this argument.

As an initial matter, this claim fails because Pennsylvania Rule of Professional Conduct 1.5(e) permits the division of a fee for legal services with another lawyer in a different firm if "the client is advised of and does not object to the participation of all the lawyers involved" and the total fee is "not illegal or clearly excessive." Pa.R.P.C. 1.5(e).

It is axiomatic, however, that the Pennsylvania Rules of Professional Conduct "do not have the effect of substantive law" or "give rise to a cause of action." *In re Adoption of M.M.H.*, 981 A.2d 261, 272-73 (Pa. Super. 2009) (citation omitted). Rather, the Rules are merely "a basis upon which to sanction a lawyer through the disciplinary process." *Id.* at 273. Thus, even if the trial court found that EG and SMBB violated Rule 1.5(e), such violation does not provide a legal foundation for Appellant's claim.

Additionally, even assuming *arguendo* that a violation of the Rules of Professional Conduct did create a private cause of action, Appellant would not have standing to bring a claim because he is not the party aggrieved by any purported violation of the Rules of Professional Conduct. Rather, Z.G. would be the proper plaintiff in that action. As noted above, Z.G. is not a party to Appellant's complaint.

Finally, even if Appellant could overcome these undisputed legal obstacles to support this argument and we found that the trial court erred in

not voiding the referral agreement between EG and SMBB, the voiding of the agreement would not magically create legal rights for Appellant—a non-party to the referral agreement—to the referral fee.

Accordingly, because the Rules of Professional Conduct do not have the effect of substantive law, Appellant cannot state a claim for relief predicated on their purported violation. This claim, thus, fails.

**C.**

In his second issue, Appellant asserts that the trial court erred in granting EG's motion to bifurcate thereby denying him a jury trial on his declaratory judgment claim. Appellant's Brief at 33-45. He disagrees with the trial court's conclusion that there were no disputed issues of fact with respect to the declaratory judgment claim.[7] Therefore, relying on Article 1,

---

[7] Appellant claims that the parties disputed: (1) whether Z.G. consented to a division of SMBB's legal fee with EG in light of her letter of December 1, 2016, and her affidavit; (2) whether Z.G. objected to EG receiving any part of the fee from her personal injury case; (3) whether Z.G. terminated EG; (4) whether Z.G. consented to a division of SMBB's legal fee with Appellant; (5) whether EG performed under the August 6, 2014 email between Phillips and Baer after Appellant left EG; (6) whether Appellant disclosed to EG and Fred Santarelli that the Z.G. case would go with him after he left EG; (7) whether EG did anything to mitigate any of its alleged damages after Appellant said he would leave EG in 2016; (8) whether a duty existed for Appellant to compel EG's clients to pay EG after Appellant went to work for another firm; (9) whether EG's alleged damages were caused by persons other than Appellant; (10) whether EG must honor the terms of its retainer agreement with Z.G. regarding what it is owed after it was terminated; and (11) what quantum meruit amount, if any, EG is entitled based on the time expended on Z.G.'s case. Appellant's Brief at 36-37.

- 13 -

Section 6 of the Pennsylvania Constitution, 42 Pa.C.S. § 7539(b), and Pa.R.C.P. 1601(b), he claims that he was entitled to a jury trial.

Section 7539(b) of the Declaratory Judgments Act provides that "[w]hen a proceeding under [the Act] involves the determination of an issue of fact, such issue **may** be tried and determined in the same manner as issues of fact are tried and determined in other civil actions[.]" 42 Pa.C.S. § 7539(b) (emphasis added).

With respect to jury trials in declaratory judgment actions, Pa.R.C.P. 1601(b) states: "[i]f the right to trial by jury of disputed issues of fact exists in such an action, it shall be deemed waived unless demanded in the time and manner provided in [the Rules.]" Pa.R.C.P. 1601(b). The Note to Rule 1601(b) provides that "Rule 1601(b) gives no specific guidance on the existence of a right to a jury trial[.]" *Id.* at Note.

Contrary to Appellant's claim, neither Section 7539(b) nor Rule 1601(b) entitle him to a jury trial on his declaratory judgment claim. In fact, the plain language of both militates against such a finding. Section 7539(b) clearly states that disputed issues of fact in a declaratory judgment action **may** be determined by a jury. Similarly, the note to Rule 1601(b) explicitly refuses to provide guidance on the right to a jury trial in declaratory judgment actions.

Appellant also argues that the Pennsylvania Constitution guarantees him a right to a jury trial because this case is equivalent to an action in assumpsit for money damages, which, historically, would have been tried before a jury

- 14 -

if there had been disputed issues of fact. Appellant's Brief at 34 (citing Pa. Const. Art. I § 6).

In support of this claim, Appellant relies on **Petrecca v. Allstate Ins. Co.**, 797 A.2d 322 (Pa. Super. 2002). In **Petrecca**, the plaintiffs filed suit against Allstate asserting claims of breach of insurance contract and bad faith seeking monetary damages on both claims. **Id.** at 324. The trial court denied Allstate's request for a jury trial. **Id.** Following a bench trial, the court entered a monetary judgment in favor of the plaintiffs. **Id.** On appeal, Allstate challenged, *inter alia*, the trial court's denial of its request for a jury trial on its breach of contract claim and this court reversed. **Id.** at 324-26.[8] In so doing we held that "[i]t is axiomatic that the right to a jury trial applies to breach of contract claims requesting only monetary damages." **Id.** at 325.

Seeking to benefit from the holding in **Petrecca**, Appellant claims that this case "would have been an assumpsit action—if it was an action for money not in a tort context—but rather than implead the client or SMBB for breach of contract or a related claim, the parties to this matter sued each other in declaratory judgment[.]" Appellant's Brief at 34. In other words, Appellant avers that this would have been an assumpsit action for which he would have had a guaranteed right to a jury trial **if** this were an entirely different cause of action with different parties.

---

[8] It bears noting that **Petrecca** was not a case addressing claims brought under the Declaratory Judgment Act.

- 15 -

We find Appellant's reliance on **Petrecca** misplaced and his claim unavailing. Notably, **Petrecca** is not a case addressing claims brought under the Declaratory Judgment Act, but rather simply addresses the right to a jury trial in a breach of contract action for money damages. In addition, unlike the plaintiffs in **Petrecca**, the parties here were not seeking monetary damages, but rather a declaration of their respective rights under the referral fee agreement. Thus, notwithstanding Appellant's assertion that, under a different and hypothetical set of facts and circumstances he would be entitled to a jury trial, given the actual facts, circumstances, and claims asserted by the parties here, Appellant is not entitled to relief on this claim.

**D.**

In his third issue, Appellant claims that the trial court erred in failing to give effect to Z.G.'s letter dated December 1, 2016, purporting to discharge EG as her attorneys to void the referral fee agreement between EG and SMBB. Appellant's Brief at 45-49. He asserts that the letter had the "legal effect" of transferring the referral fee to him. He further argues that, because Z.G. had terminated her relationship with EG, EG's recovery is limited to quantum meruit under its original retainer agreement with Z.G. *Id.*

In addressing this claim, the trial court explained that:

> The letter was drafted in 2016, signed by Z.G. in 2017, and produced in 2018 **after** the underlying case already settled. It does not reference a contract or fee agreement between Z.G. and [Appellant]. It does not use the expressions "referral fee," "discharge," or "termination." There is no stated "objection" to any of the four agreements in this case: (1) no objection to the fee agreement by Eddie (on Z.G.'s behalf) with EG; (2) no

objection to Eddie's fee agreement (on Z.G.'s behalf) with SMBB;
(3) no objection to Z.G.'s own fee agreement with SMBB; and (4)
no objection to the referral agreement between EG and SMBB.

Trial Ct. Op. at 21. The court found enforceable the referral agreement between EG and SMBB and, separately, the contingent fee agreement between Z.G. and SMBB. *Id.* at 24. Critically, the court noted that "Z.G. was not a party to the referral agreement between EG and SMBB and has no legally cognizable interest in this dispute since the amount of her recovery remains unchanged regardless of who gets the referral fee." *Id.* at 25.

We agree with the trial court. Simply, as a non-party to the referral fee agreement, Z.G. had no legal authority to void it or alter its terms to provide for payment of the fee to Appellant.[9]

## E.

In his fourth issue, Appellant avers that the trial court erred in finding that statements in his pleadings were judicial admission and not, as he insists, merely statements "fram[ing] legal theories" and setting forth legal conclusions concerning contract formation and termination. Appellant's Brief at 49-57. In particular, Appellant asserts that the court improperly used paragraphs 23 and 24 of his answer to EG's complaint and paragraphs 26 and 42 of his counterclaim to make factual determinations where the statements made in those paragraphs did not admit factual issues. He argues that the

---

[9] Having affirmed the trial court's determination that Z.G.'s letter did not terminate the referral fee agreement between EG and SMBB, we need not address Appellant's claim that EG's recovery is limited to quantum meruit.

court erred in concluding that Appellant admitted that: (1) the referral fee agreement was valid and enforceable; (2) he explained the referral fee agreement to Z.G.; and (3) Z.G. approved of payment of a referral fee to EG. *Id.* at 53-54, 56.

"Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party." *Coleman v. Wyeth Pharmaceuticals, Inc.*, 6 A.3d 502, 524 (Pa. Super. 2010). *See also Steinhouse v. Herman Miller, Inc.*, 661 A.2d 1379, 1382 (Pa. Super. 1995) ("Averments in pleadings constitute binding judicial admissions, conclusive in their nature insofar as their effect is confined to the case in which they are filed."). Judicial admissions are automatically considered "true and cannot be contradicted by the admitting party." *Cogley v. Duncan*, 32 A.3d 1288, 1292 (Pa. Super. 2011) (citation omitted). Such admissions "must be a clear and unequivocal admissions of fact" and "are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law." *Koziar v. Rayner*, 200 A.3d 513, 521 (Pa. Super. 2018) (citation omitted).

Paragraph 26 of Appellant's Counterclaim states:

26. **[Appellant], in consultation with other attorneys at [EG], decided to refer Z.G.'s matter to co-counsel Ben Baer at [SMBB], for litigation aspects of the representation. On August 6, 2014, Dean Phillips of [EG] confirmed the referral of Z.G.'s case to [SMBB] through an email.** (*See* Phillips email of Aug. 6, 2014, attached as Exhibit C. hereto.)

- 18 -

Counterclaim, 7/11/19, at ¶ 26 (emphasis added)

Appellant argues that the trial court erred in concluding that this statement demonstrates that Appellant admitted that the referral fee agreement was valid and enforceable. Appellant's Brief at 53. In addressing this issue, however, the trial court explained that it found that in this paragraph, Appellant factually admitted that EG referred Z.G.'s case to SMBB and that the August 6, 2014 email between Attorneys Baer and Phillips confirmed the referral. The court further explained that the testimony at trial was entirely consistent with the factual averment in this pleading. Thus, the court concluded that it constituted a judicial admission. The court did not, contrary to Appellant's argument, conclude that Appellant had admitted that the referral fee agreement was valid and enforceable, merely that the August 6, 2014 email confirmed the existence of a referral agreement.[10]

Paragraph 23 of Appellant's answer to EG's second amended complaint states:

> 23. Denied as stated. [Appellant] and [SMBB] negotiated the referral arrangement over a period of weeks. **The email of August 6, 2014, confirmed the arrangement.** Denied that it was negotiated in Montgomery County; all negotiations took place in Philadelphia County. **Admitted that [EG], in exchange for a referral fee**, assumed all obligations with respect to client contact and support that it did not perform.

Answer, 7/11/19, at ¶ 23 (emphasis added).

---

[10] The court separately made a legal conclusion characterizing the email as "clear[ly] and unequivocal[ly]" confirming "the existence of a valid and enforceable referral fee between EG and SMBB." Findings of Fact and Conclusions of Law, 9/2/22, at 24.

The trial court found that Appellant factually admitted that EG, and not Appellant, was the party to the referral fee agreement with SMBB and that the August 6, 2014 email confirmed the terms of the agreement. The trial court explained that this admission was consistent with the trial testimony of Attorneys Baer and Phillips, and with Appellant's trial testimony that "if I was still at [EG, ] the fee would be paid to [EG]." Trial Ct. Op. at 27 (citing N.T. Trial, 7/12/22, at 109). We agree with the trial court's conclusion that this constitutes a judicial admission.

Paragraph 24 of Appellant's answer to EG's second amended complaint states:

> 24. Denied as stated. **[Appellant] negotiated the referral and explained it to the client.** Denied as to the assumption of responsibility by [SMBB], as [EG] promised that it would "continue to interact with the Gabriel family," an important element of keeping the client satisfied and involved, and performed this obligation solely through [Appellant] during [Appellant's] time with [EG], and breached that obligation through nonperformance after [Appellant] left [EG].

Answer at ¶ 24 (emphasis added).

The trial court explained that it found this statement represents Appellant's judicial admission that he negotiated and explained the referral agreement to Z.G. Appellant argues that the statement only goes so far as to admit that he negotiated the "referral" and explained "it" to Z.G.—not that he negotiated and explained the referral fee arrangement between EG and SMBB to the parties. Appellant's Brief at 54. This position is, however, inconsistent with Appellant's own testimony that he explained the terms of the

referral fee agreement to Z.G. and Eddie and that they knew EG was to receive the referral fee from SMGG.[11]  Accordingly, we agree with the trial court that this statement constitutes a judicial admission.

Finally, Paragraph 42 of Appellant's counterclaim states:

42.    The legal effect of Z.G.'s letter **was to withdraw her approval** of a payment to [EG] of the referral fee on her matter, directing that it go to [Appellant].

Counterclaim at ¶ 42 (emphasis added).

Appellant argues that the trial court erred by concluding that Appellant had made a judicial admission about the legal effect of Z.G.'s letter. Appellant's Brief at 56.  Our review indicates, however, that contrary to Appellant's claim, the trial court concluded that this paragraph represented a judicial admission of fact that Z.G. had at some time earlier approved the referral fee payment to EG.  In support of the court's conclusion, it opined that this reading of paragraph 42 was consistent with Appellant's trial testimony that Z.G. "would have approved of a payment to [EG] if I was working there." Trial Ct. Op. at 27 (citing N.T. Trial, 7/11/22, at 169.).  Thus, the trial court properly treated this statement as a judicial admission.

---

[11] **See** N.T. Trial, 7/12/22, at 100-102 (where Appellant testifies that he was present when Eddie signed the contingency fee agreement with SMBB and explained it to him, including the provision that stated that lawyers from two different firms would be splitting or sharing the fee generated); **id** at 103-106 (where Appellant testified that he explained to Z.G. that the referral fee would not come out of her recovery and that Attorney Baer also explained to Z.G. and Eddie how the contingency fee agreement worked).

In sum, we agree with the trial court that each of the disputed statements in Appellant's pleadings were judicial admissions of fact, confirmed by the evidence at trial, upon which the trial court based its legal conclusion that the referral fee agreement was valid and enforceable between EG and SMBB. Appellant is, therefore, not entitled to relief on this claim.

**F.**

In his fifth issue, Appellant challenges the trial court's determination that Appellant was bound by his admissions under Pa.R.C.P. 4014. Appellant's Brief at 57-58. In particular, referring to EG's Request for Admission ¶ 11, he claims that "in finding that [Appellant] admitted that he never entered into a referral fee agreement with SMBB in connection with the Z.G. personal injury matter, the [c]ourt impermissibly accepted a conclusion of law as fact." *Id.* at 58. He concludes, therefore, that the trial court committed reversible error by not disregarding the purported conclusion of law sought in this request for admission. *Id.* Appellant also asserts that "the interests of justice require this Court to disregard Request for Admission No. 7" in which Appellant inadvertently admitted that he did not inform anyone at EG that Z.G. wished to discharge EG. *Id.*

This Court has explained the following regarding requests for admissions under Pa.R.C.P. 4014.

> [Rule 4014] permits a party to serve upon another party a written request for the admission of the truth of certain matters relating to statements or opinions of fact or the application of the law to fact. Pa.R.C.P. 4014(a). This includes questions regarding the execution, correctness, genuineness, authenticity, signing,

delivery, mailing, or receipt of any document described in the request for admissions. *Id.* "The purpose of this discovery tool is to clarify and simplify the issues raised in prior pleadings in order to expedite the litigation process." *Christian v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, [] 686 A.2d 1, 5 (Pa. Super. 1996) (citation omitted)[]. **Unless the party responds to the request within 30 days (45 days for a defendant), the matter is deemed admitted**. Pa.R.C.P. 4014(b).

*Estate of Borst v. Edward Stover Sr. Testamentary Trust*, 30 A.3d 1207, 1210 (Pa. Super. 2011) (emphasis added). "Conclusions of law are not within the permissible scope of requests for admissions; requests must call for matters of fact rather than legal opinions and conclusions." *Christian*, 686 A.2d at 5. "Any matter admitted under [Pa.R.C.P. 4014] is conclusively established unless the court on motions permits withdrawal or amendment of the admission." Pa.R.C.P. 4014(d).

Our review of the record indicates that, on April 1, 2019, EG served Appellant with Requests for Admissions. Appellant failed to respond.[12] Accordingly, pursuant to Pa.R.C.P. 4014(b), the trial court found that Appellant had admitted the facts set forth in the requests, including those Appellant now seeks to withdraw. Notably, Appellant never filed a motion to withdraw or amend his admissions pursuant to Rule 4014(d). Accordingly,

---

[12] In Appellant's brief to this Court, Appellant omitted the significant fact that he failed to respond to the request for admissions, thus resulting in their deemed admission.

the trial court properly deemed these statements admitted and Appellant is not entitled to relief on this claim.[13]

## G.

In his final issue, Appellant claims that the trial court erred in finding that EG's purported contractual obligation to "continue to interact" with Z.G. was immaterial to whether Appellant has a legal right to the referral fee. Appellant's Brief at 59-61.

In addressing this claim, the trial court aptly explained that Appellant lacks standing to raise it. The trial court opined that "[e]ven if continued contact with Z.G. were a material term of the referral agreement,[14] EG's alleged non-performance of this obligation is **SMBB's** to assert as the contracting party with EG." Trial Ct. Op. at 30-31 (emphasis in original). We agree and conclude that this claim does not garner Appellant relief.

## H.

In sum, following our review, we conclude Appellant is not entitled to any relief on his claims and the trial court properly entered a declaratory judgment in favor of EG.

_____

[13] We also observe that, contrary to Appellant's argument, the admission set forth at No. 11 is a statement of fact and not a conclusion of law.

[14] The court also concluded that continued involvement with Z.G. was not a material term of the referral fee agreement based, at least in part, on the testimony of the drafting party—EG Attorney Phillips—and the approving party—SMBB Attorney Baer.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/1/2023</u>